## SEDGWICK vs. ASHBURNER.

*In the matter of the Estate of* LUKE ASHBURNER, *deceased.*

WHERE A., domiciled in Massachusetts, died in that State, his will was proved there, and letters testamentary issued to C. A. and T. S.; and G. A., another executor, residing in India, proved the will, qualified as executor, and collected a debt due the testator in that country; and then transmitted bills of exchange for 3-7ths of the East Indian debt, the share of C. A. under the will, to T. S., at New-York, to be endorsed "without recourse" to C. A., the legatee, as "being her 3-7ths of the proceeds of the estate of her late husband in Bombay;"—held, that neither the bills nor their proceeds were assets of the testator in New-York, nor formed the subject of administration here:

Also, that T. S. did not receive the bills, nor was entitled to collect them, as part of the estate of his testator, in his capacity of executor, but as agent of the East Indian executor, in the transmission, to a legatee, of a legatory share in a foreign debt collected, administered, and distributed by a foreign executor.

THEODORE SEDGWICK, *in Person.*
W. S. ROWLAND, *for Legatee.*

THE SURROGATE. Luke Ashburner died June 16, 1844, at Stockbridge, Massachusetts. He was domiciled at that place, and his will was proved there. He appointed his wife Cornelia, executrix, and George and Samuel Ashburner, William Whitney and Theodore Sedgwick, executors. Mrs. Ashburner and Theodore Sedgwick, both took out letters testamentary in Massachusetts, the former on February 4, 1845; the latter, July 29, 1845.

At the death of the testator, there was a debt due to him from Cowaje Monackje, in India, and George Ashburner took out letters there for the purpose of collecting this debt. He collected it, and Mrs. Ashburner being entitled, by the terms of the will, to three-sevenths of the proceeds, he remitted the amount to Mr. Sedgwick, at New-York. Mr. Sedgwick received the bills, and July 1, 1847, took out

14

letters testamentary in New-York, claiming that the bills were assets here, and placing them as such, on the inventory.

The sole question in this case is, whether the bills remitted to Mr. Sedgwick, from India, by George Ashburner, for Mrs. Cornelia Ashburner's share of the East Indian debt, were assets here.

All foreign administrations are merely ancillary and subordinate to the domestic; the rights of legatees and next of kin, in cases of testacy or intestacy, depending upon the laws of the country where the deceased had his home. (*Dawes* vs. *Boylston*, 9 *Mass. R.*, 337.) By virtue of his letters in Massachusetts, Mr. Sedgwick was there a domestic executor, but his authority in New-York was as a foreign executor. He qualified there in the first instance, and then, before the will was admitted to probate and letters were issued to him here, he received these bills from the foreign executor in India. The bills were payable to the order of Mr. Sedgwick, and it was certainly not necessary for him, in order to pass them over to Mrs. Ashburner, or to collect them and pay her the proceeds, to take out letters here. The Surrogate of New-York had no authority to issue letters in this case, unless the testator left " assets" here, or subsequent to his death, " assets of such testator" thereafter came into this country. (2 *R. S.*, 3d ed., *p.* 126, § 46.) The statute (*Ibid.*, *p.* 147, § 6,) declares what property shall be deemed assets, and enumerates " debts secured by mortgages, bonds, notes, or bills;" but this, of course, means debts due to the deceased. By the Common Law, simple contract debts are *bona notabilia*, where the debtor lives. (*Williams on Ex.*, 263.) The consequence is, that although the law of the domicil of the testator governs as to the disposition of the estate, yet as debts due to the deceased are assets where the debtor lives, it is necessary to take probate of the will where the assets are. The remedy in cases of administration is regulated by the law of the place, where it is sought to recover possession of

the testator's property. (*Embry* vs. *Millar*, 1 *A. K. Marshall*, 303.) But it seems, at Common Law, necessary to take probate in a foreign country, only when there were assets there at the death of the testator, and if assets come into the foreign country subsequently, it is doubtful whether they give jurisdiction to prove the will. By our statute, however, assets coming here subsequent to the death of the testator, do give the Surrogate jurisdiction. Were the bills remitted by the East Indian executor, assets? I think not. The original debt by Cowaje Monackje, constituted *bona notabilia* in India. It was collected by the executor there, converted into money, and regularly administered. (*Logan* vs. *Fairlie*, 2 *Sim. & Stu.*, 291.) If the debtor had travelled here, it would have become necessary, in order to sue him, to take out letters in New-York. But the debt has been specifically and essentially changed. As assets, it no longer remains actually and virtually *in specie*. (*Saffran's Adms.* vs. *Kennedy*, 7 *J. J. Marshall*, 188.) It is gone as a debt. The proceeds are in course of distribution by the East Indian executor. He severs the fund into legatory shares, and transmits one of those shares, not to the place of domestic administration, but to a foreign place; and not for the purpose of being administered upon and distributed, but for the purpose of being transferred in its then present shape, as represented in bills, to the legatee, Mrs. Ashburner. Mr. George Ashburner speaks of the funds as " Mrs. Ashburner's money," and requests the bills to be handed " to Mrs. Ashburner upon giving a sufficient release," at the same time asking Mr. Sedgwick to endorse them to her " without recourse." Mr. Sedgwick in his letter of July 1, describes the bills as " being her 3-7ths of the proceeds of the estate of her late husband in Bombay," and in fact, the proceeds of the bills when collected, except an amount retained by Mr. Sedgwick on a claim for charges and services, were really paid wholly to Mrs. Ashburner, instead of being distributed. If the whole fund had been transmitted by George Ashburner to Mr. Sedg-

wick, at New-York, for the purpose of distribution at this place, I do not think it could have been considered assets here, to justify the issuing of letters. Mr. Sedgwick would have only been the agent of the foreign executor, in remitting the proceeds of the foreign debt. It would be a singular proposition to hold, that administration could be taken out in every foreign jurisdiction, where these bills should happen to come.

But the evidence establishes, to my mind, conclusively, that Mr. Sedgwick in the receipt of those bills, acted as the agent of Mr. Ashburner. The refusal of Mrs. Ashburner to accept them, and release George Ashburner, until she was assured of their payment, did not alter the character in which Mr. Sedgwick had received them and held them.

In the case of *Currie* vs. *Bircham*, 1 *Dowl. & Ry.*, 35, the widow of an officer, who died intestate in India, obtained letters of administration of her husband's effects at Bombay, and remitted the proceeds of the effects in government bills to her agent in England. A creditor of the intestate took out letters of administration of the intestate's effects in England, and brought an action against the widow's agent for money in his hands, as part of the intestate's effects. It was held, that the wife of the intestate was entitled to all the effects of which her husband died possessed in India, by virtue of her letters of administration, granted to her in that country. The Court said, " The effects are remitted to this country by her in the shape of bills, and they come to the hands of her agent. He receives the money to her use, and in her own right as administratrix. If she has any claim upon the money, which it is alleged the agent retained in his hands, she may maintain an action, but it will not lie at the suit of this plaintiff under the letters of administration, which he has obtained."

Assets are defined in *The Touchstone*, 496, to be " all those goods and chattels, actions and commodities, which were of the deceased in right of action or possession as his

own, and so continued to the time of his death, and which, after his death, the executor or administrator doth get into his hands, as duly belonging to him in the right of his executorship or administratorship, and all such things as do come to the executor or administrator in lieu, or by reason of that." The writer here speaks of assets in the sense of property, sufficient, *assez*, to make the executor chargeable, and the definition is broader than the language of our statute. But still, it is essential, according to its terms, that the executor get the property *in the right of his executorship*. This element is wanting in the case before me. The bills were remitted for a special purpose, and could not, in consonance with the authority of the East Indian executor, be diverted from that purpose, and be applied, or considered as general assets here. If so, there would have to be a new distribution here, according to the terms of the will, instead of the funds being Mr. Ashburner's, three-sevenths of the East Indian effects. The amount of it is, that the Indian debt was collected by the Indian executor, converted into money there, and *administered* there. It cannot, in my judgment, when divided off into legatory portions, be administered upon a second time in another foreign country,—where, for the purpose of being transmitted to a legatee, one of the shares has been sent to a person, who, though an executor duly qualified at the place of domicil, has no authority to administer here, at the time of the receipt of the bills,—and to whom they are not sent, and by whom they are not received, either in the character of an executor or for the purpose of being administered. Mr. Ashburner's instructions accompanying the bills, imply that the single object of sending them to Mr. Sedgwick was, that he might receive the proper release or discharge from the legatee, on transferring to her the bills. Her refusal to receive them, or to discharge the Indian executor, until the bills were realized, did not change the nature of the fund, or the character of the transaction. What was true of the bills,

continued to be true of their proceeds when collected. The fund was nothing else than the share of a legatee in a foreign debt, remitted by the foreign executor for the purpose of payment to her, and requiring the intervention of an ancillary administration here for no earthly purpose whatever,—neither to make the payment good, nor to protect the fund, nor to authorize its collection. Mr. Sedgwick, individually, could do all in regard to the subject matter that was necessary. His powers and rights were not increased by his letters taken out here. As an individual, his authority was complete. He derived no aid from the letters testamentary.

It seems to me, therefore, that there has never been any fund in the hands of Mr. Sedgwick as executor, for which he is either bound, or has any right, to account as executor in this jurisdiction; and without pronouncing collaterally on the validity of his letters testamentary, issued by the Surrogate of New-York, it is sufficient to direct an order to be entered to the above effect.