In the Matter of the Application for Revocation of Letters of Administration Granted to JOHN McCABE, as Administrator of the Estate of JAMES A. McCABE, Deceased, Respondent.

LAURENCE McCABE, as Administrator of the Estate of JAMES A. McCABE, Deceased, Appellant.

*Administration of the estate of a non-resident — it will not be granted because personal property of the decedent is after his death brought into the State of New York by a foreign administrator.*

Where an administrator, appointed in the State of Pennsylvania, of the estate of a deceased resident of that State, brings into the State of New York securities which are claimed to constitute part of the decedent's estate, the presence of such securities in the State of New York does not empower the surrogate of the county in which they are situated to issue original letters of administration to a third person upon the decedent's estate under subdivision 3 of section 2476 of the Code of Civil Procedure, which authorizes the Surrogate's Court to grant original letters of administration, "Where the decedent, not being a resident of the State, died without the State, * * * leaving personal property which has, since his death, come into that county, and no other, and remains unadministered."

In such a case the securities in the State of New York cannot be said to be personal property which remains unadministered.

The administrator appointed in the State of the domicile of a decedent takes title to all the decedent's personal property, whether situated within or without such State.

APPEAL by the petitioner, Laurence McCabe, as administrator of the estate of James A. McCabe, deceased, from an order of the Surrogate's Court of Broome county, entered in said Surrogate's Court on the 21st day of October, 1902, denying the petitioner's application to revoke letters of administration theretofore issued to John McCabe upon the estate of James A. McCabe, deceased, with notice of an intention to bring up for review upon such appeal an intermediate order entered in said court on the 20th day of August, 1901, which directed the issuance of such letters of administration.

James A. McCabe died on the 7th day of April, 1900, at Warren, Penn., intestate, a resident of said State. He left property in Pennsylvania, but none within the State of New York. On the

10th day of April, 1900, Laurence McCabe, a brother of deceased, was duly appointed administrator of his estate in Pennsylvania, and entered upon the discharge of his duties as such, and duly filed an inventory of said estate. On the 9th day of April, 1901, John McCabe, another brother of deceased, presented to the Orphans' Court of Warren county, Penn., the same being a court of competent jurisdiction, a petition setting forth, among other things, that said Laurence McCabe had obtained possession of ten bonds of the Texas and Pacific Railroad Company of the value of $1,000 each, which he alleged in his petition were the property of the decedent, and had not been accounted for by the said administrator as a part of decedent's estate, and he asked that the administrator be required to increase the amount of his bond as such administrator, and also that said Laurence McCabe be required to account for the said bonds of the Texas and Pacific Railroad Company as a part of the assets of the decedent's estate.

Commissioners were appointed by said court to take testimony of witnesses to be read in evidence upon the hearing of said application. Hearings were had before said commissioners in Pennsylvania from time to time, and the said Laurence McCabe was sworn before said commissioners. By the testimony of said Laurence McCabe it appeared that said ten bonds had been deposited by said Laurence McCabe in the safe deposit vaults of the First National Bank of Binghamton, N. Y., that being the nearest bank to his residence that contained safe deposit vaults. On the 10th day of August, 1901, an adjournment of said proceeding was taken to August 23, 1901, and the said Laurence McCabe was notified to produce said bonds at said adjourned hearing, and he was thereafter and before said 23d day of August, 1901, served with a subpœna to produce said bonds at the hearing so to be held on the 23d day of August, 1901. On the 21st day of August, 1901, said Laurence McCabe went to Binghamton, N. Y., for the purpose of obtaining said bonds to have them in readiness at the hearing to be held on the 23d day of August, 1901, in Pennsylvania.

Said Laurence McCabe then found that said John McCabe had on August 20, 1901, without notice to him or any other person, obtained an appointment as administrator of the goods, chattels and credits of James A. McCabe, deceased, from the Surrogate's Court

of the county of Broome, on a petition stating that said bonds had since decedent's death come into that county and remained unadministered, and an action was thereupon commenced by said John McCabe as such administrator against the said Laurence McCabe to recover said bonds, and the said First National Bank of Binghamton was restrained from delivering said bonds to the said Laurence McCabe. Said Laurence McCabe then presented his petition to the Surrogate's Court of Broome county asking for the revocation of the letters of administration to said John McCabe in which petition the death of said James A. McCabe and the history of the proceedings before the register and the Orphans' Court of Warren county, Penn., were fully set forth. Said petition further alleges "that the bonds of said Texas and Pacific Railroad Company above referred to are claimed by your petitioner as his property and not the property of the estate of the said James A. McCabe, deceased, and that said bonds and all other property and assets alleged by the said John McCabe to belong to and constitute a part of the estate of the said deceased, were in the State of Pennsylvania at the time of decedent's death and came into the possession and under the control of your petitioner in said State of Pennsylvania by virtue of his appointment in said State as administrator aforesaid ; that all of the property alleged to be a part of decedent's estate and which has been or now is in the State of New York was brought into this State by your petitioner while having the same in his possession and control as the legal representative of the estate of the said James A. McCabe, deceased, and which said property is now being administered in said State of Pennsylvania by legal proceedings now pending in said State to determine the title to said property and the disposition thereof."

The Surrogate's Court denied the motion to revoke the letters so granted to John McCabe, and from the order denying said motion this appeal is taken.

*Lyon & Painter, McCollum & Smith* and *W. D. Painter,* for the appellant.

*Jerome De Witt, Theodore R. Tuthill* and *W. D. B. Ainey,* for the respondent.

CHASE, J. :

The jurisdiction of the Surrogate's Court of Broome county, if any, to issue said letters of administration to John McCabe is derived from section 2476 of the Code of Civil Procedure, the material part of which is as follows : "The Surrogate's Court of each county has jurisdiction    *    *    *    to grant letters of administration    *    *    *    in either of the following cases :    *    *    *

" 3. Where the decedent, not being a resident of the State, died without the State, leaving personal property within that county, and no other ; or leaving personal property which has, since his death, come into that county, and no other, and remains unadministered."

For the purposes of this decision we assume that the Texas and Pacific bonds are personal property left by the decedent.

They were left by the decedent in Pennsylvania. They came rightfully into the possession of the legal representative of the decedent there. While so rightfully in his possession they were by him brought within the county of Broome, N. Y., and placed by him in a bank vault for safekeeping. The possession of the bank was the possession of Laurence McCabe.

The question is here directly presented whether personal property temporarily within a county of this State, in the possession of a domiciliary administrator, is sufficient to give to the Surrogate's Court of that county jurisdiction to appoint an administrator of the goods, chattels and credits of a decedent in such county.

The section of the Revised Statutes (Pt. 2, chap. 6, tit. 2, art. 2, § 23) from which the Code provision was taken did not include the words " and remains unadministered." The added words except from the jurisdiction of the court personal property wholly administered and personal property in process of administration.

The administrator of the domicile of a decedent takes title to all his personal property whether situated within or without the State. (*Maas* v. *German Savings Bank*, 73 App. Div. 524.) The record does not disclose any facts requiring or authorizing ancillary letters of administration in this State. (*Estate of Ladd*, 5 Civ. Proc. Rep. 50.) And no reason is disclosed for granting original letters of administration in this State, and possibly subjecting such personal property to the payment of a transfer tax.

If the statute is construed to mean that our courts have no jurisdiction to grant original letters of administration when the only personal property in this State is in the hands of a duly appointed legal representative of the deceased, the scramble between the courts of adjoining States, each with full jurisdiction over the subject-matter, will be avoided. It cannot be that our statutes authorize a wild rush for the personal property of a decedent, if his legal representative happens to come within our borders, with such personal property on his person.    As was said in *Sedgwick* v. *Ashburner* (1 Bradf. 105), " It would be a singular proposition to hold that administration could be taken out in every foreign jurisdiction where these bills should happen to come."

The personal property of James A. McCabe being in process of administration cannot be said to remain " unadministered." We understand the decision of the court in *Townsend* v. *Pell* (3 Dem. 367) to have been that personal property within the State of New York reduced to the possession of the domiciliary administrator is not unadministered property within the jurisdiction of the court. In that case the testator died a resident of Rhode Island, leaving a will which was thereafter probated in that State, and under which an executrix was duly appointed. The testator left certain money on deposit in banks and trust companies, and certain stocks and bonds in the custody of bankers in the city of New York. After the appointment of the executrix she came to the city of New York and took actual possession of the said money, stocks and bonds. Subsequently another person named as executor in the will of the testator, but who had not duly qualified in Rhode Island, procured the will to be admitted to probate in the county of New York, and letters testamentary were thereupon issued to him, without notice to the executrix. The executrix then made an application to the Surrogate's Court of the county of New York to revoke the probate of said will in New York county, and also to revoke the letters testamentary therein. The court said : " There is nothing in the averments of Mr. Townsend's affidavit respecting the action of the executrix in subsequently placing these assets, or a portion of them, in the custody of Mr. Griswold, inconsistent with Mrs. Pell's claim that at the time of the filing of Mr. Townsend's petition there were no unadministered assets and that there are now no unadministered

assets belonging to the testator's estate within the jurisdiction of this court."

In *Matter of Accounting of Hughes* (95 N. Y. 55), the court, referring to personal property that had been illegally removed from the State of Pennsylvania into the State of New York, say: "The jurisdiction over the assets of an intestate is local and upon his death their care devolves of necessity upon the sovereignty of the country where they may be, until a legal representative of the intestate is appointed who shall be entitled to their custody. * * * Where assets so situated have been illegally removed from the jurisdiction of the domicile to the prejudice of domestic creditors, or others interested in the estate, it would, we conceive, be the plain duty of the courts in another jurisdiction where they were found to direct their return to the jurisdiction of the domicile. This course would be alike demanded by a sense of justice and the comity of States. A removal under such circumstances would rightly be considered an act of usurpation to which courts would not lend their sanction."

In *Hoes* v. *N. Y., N. H. & H. R. R. Co.* (173 N. Y. 435) the court, referring to personal property which had since the death of a decedent come into a county of the State, say: "These provisions should be construed as meaning that the assets must 'arrive' or 'come' into the State in good faith in due course of business."

In Jessup's Surrogate Practice (2d ed. p. 714) it is said that "the issuance of any letters of administration upon the estate of an alleged intestate decedent will be denied * * * in case it appears that the assets claimed to be the basis of jurisdiction are being or have been already administered upon."

The question as to the title of the Texas and Pacific bonds, and as to whether they should be accounted for by Laurence McCabe, as administrator of the estate of James A. McCabe, deceased, is being litigated under issues expressly framed for that purpose, in a court of competent jurisdiction in an adjoining State, between parties both of whom are residents of that State, and reasons of public policy, as well as the comity of States, impel us to a holding that will prevent our already over-crowded courts from being unnecessarily burdened with a litigation between non-residents of this State, in utter disregard of the court of an adjoining State that has first taken upon itself the burden of settling the controversy.

. The letters so granted to John McCabe should have been revoked. The order of the Surrogate's Court should be reversed, with ten dollars costs and disbursements and the letters ordered revoked.

All concurred.

Order reversed, with ten dollars costs and disbursements, and letters ordered revoked.