In the Matter of the Application for Ancillary Letters Testamentary on the Last Will and Testament of LINCOLN S. ROGERS, Late of the Town of Montclair, County of Essex, State of New Jersey. MARY T. ROGERS and Another, Executrices, etc., of LINCOLN S. ROGERS, Deceased, Appellants; ARTHUR METCALF, Respondent.

First Department, February 8, 1929.

*Ralph Stout* of counsel [*George A. Allen*, attorney], for the appellants.

*Jonas J. Hegt* of counsel [*Matthews & Hegt*, attorneys], for the respondent.

PROSKAUER, J.    Lincoln S. Rogers died on June 1, 1927, a resident of New Jersey., His will was filed, recorded and probated in the Surrogate's Court of that State, which issued letters testamentary to Mary T. Rogers and Hazel Rogers Green, both residents of New Jersey.    At the time of his death the testator had a bank account in New York county and owned a membership in the New York Curb Stock Exchange, which had a money value.    The New Jersey executrices duly procured the necessary waivers from the taxing authorities of New York, collected the bank account, sold the Curb Stock Exchange membership and removed the proceeds to the domiciliary jurisdiction.    The respondent's brief concedes that " the deposit was withdrawn, the Curb membership sold and the proceeds subsequently removed from the State of New York."    At the time of the death of Mr. Rogers there was pending in the courts of this State an action against him brought by the petitioner, Arthur Metcalf.    Upon these facts the petitioner applied to the surrogate of New York county for the issuance of ancillary letters testamen-

tary under the provisions of sections 159 and 161 of the Surrogate's Court Act, and from an order granting this application the New Jersey executrices appeal. The appellants challenge the jurisdiction of the surrogate to make this order.

Determination of this question requires a review of the judicial and legislative history of the attempt to make foreign executors amenable to the process of the New York courts. In *Helme* v. *Buckelew* (229 N. Y. 363, 368) it was held that, under the provisions of section 1836-a of the Code of Civil Procedure (later re-enacted as section 160 of the Decedent Estate Law), valid service could not be effected upon foreign executors who chanced to be in this State. It was pointed out that " even though the same man was the administrator in two jurisdictions, the judgment rendered against him in one was no evidence in the other." CARDOZO, J., writes: " If the purpose of the statute was to permit the recovery of a judgment which irrespective of the consent of the jurisdiction of the domicile or of the presence of assets within this jurisdiction, would bind foreign administrators and executors everywhere as a judgment *in personam,* the statute registers a futile effort. In the language of LEARNED HAND, J., in *Thorburn* v. *Gates* (225 Fed. Rep. 613), it ' would necessarily be *brutum fulmen* in its result, and unconstitutional in its inception.' "

After that decision the Legislature amended section 160 of the Decedent Estate Law by chapter 253 of the Laws of 1925, which provided in terms that an action or proceeding pending in any court of this State in which the court shall have obtained jurisdiction of the person of a defendant or respondent who is domiciled in any other State, territory or district of the United States, or in any foreign country, shall, if the cause of action survives, not abate by reason of the death of such defendant or respondent, but his executor or administrator duly appointed in such State, territory or district of the United States or foreign country, shall, upon application of the adverse party, and upon such notice as the court may prescribe, be brought in and substituted in the place of the decedent and the action or proceeding shall continue.

*McMaster* v. *Gould* (240 N. Y. 379, 388) held this statute ineffectual because " the constitutional requirement of due process of law precludes the Legislature from providing generally for continuing actions for judgments *in personam* against the foreign executors or administrators of deceased defendants." POUND, J., writes (p. 386): " Even as to foreign executors, there must be a domicile or possession which gives to the *res* to be administered a situs in New York." He adds: " But the purpose of the New York statute is to permit the revival of suit against the foreign representative for a judgment

*in personam* without restriction or qualification. It does not discriminate between a case where there are assets and a case where there are no assets; between an attempt to reach assets and an attempt to get a general judgment *in personam.* \* \* \* The concept of a foreign non-resident executor without assets in this State as present in his fiduciary capacity is as difficult as the discarded concept of a foreign corporation as present in this State merely because one of its directors is found here." (*McMaster* v. *Gould*, 215 App. Div. 811; appeal dismissed, 242 N. Y. 604; 276 U. S. 284, accord.)

Thus in these two cases the Court of Appeals laid down the propositions that the existence of property within the State was at all events a prerequisite to the assumption of jurisdiction over foreign executors necessary to avoid the creation of a judgment which would be a mere *brutum fulmen*, and also that foreign executors could not constitutionally *in invitum* be made defendants in a pending litigation. Thereafter the Legislature repealed section 160 of the Decedent Estate Law (Laws of 1926, chap. 660).

The local creditor is thus unable to secure a judgment *in personam* against foreign executors. The attempt of the petitioner here is to secure a judgment *quasi in rem* against property which was in the State at the time of the testator's death but which had been removed at the time of the institution of this proceeding. He relies upon sections 45 and 161 of the Surrogate's Court Act. Section 45 contains the statutory limits of jurisdiction of the Surrogate's Court to grant letters testamentary and section 161 prescribes the method to be followed in the granting of ancillary letters. Subdivision 3 of section 45 gives the Surrogate's Court of each county jurisdiction " to take the proof of a will, and to grant letters testamentary thereupon \* \* \* 3. Where the decedent, not being a resident of the State, died without the State, leaving personal property within that county, and no other." Section 159 provides for ancillary letters upon a foreign probate and section 161 provides: " Where the will specially appoints one or more persons as the executor or executors thereof, with respect to personal property situated within the State, \* \* \*. If the person named in the foreign letters \* \* \* shall, after the service of citation upon him, refuse to qualify or to " designate persons to act as ancillary executors, the surrogate may issue ancillary letters to certain specified persons. The learned surrogate has held that under these statutes he acquired the right to exercise ancillary administration though the property was no longer in this State at the time of this application for ancillary administration.

We have held that where no personal claim is asserted against a

foreign executrix, she may be made a party *in invitum* to an action *in rem.* (*Lehr* v. *Sarason,* 224 App. Div. 709.) A proceeding for ancillary administration is, however, not strictly a proceeding *in rem.* Although it has been said that a proceeding to probate a will is a proceeding *in rem* " in form and substance, upon the will itself " (*Matter of Horton,* 217 N. Y. 363, 368), a proceeding for ancillary administration is directed against assets within the State. The nearest analogy is an attachment, a proceeding *quasi in rem,* where " only so far as the judgment may be satisfied from such property did it bind the defendant and it imposed no personal obligation upon him." (*Dimmerling* v. *Andrews,* 236 N. Y. 43.) So in the case of ancillary administration the decree can have no effect except as it may be satisfied by property within the reach of the process of our courts, since " the constitutional requirement of due process of law precludes the Legislature from providing generally for continuing actions for judgments *in personam* against the foreign executors." (*McMaster* v. *Gould,* 240 N. Y. 379, 388.) Ancillary administration in this State without assets presently here for administration would be mere *brutum fulmen.* (Cf. *Matthews* v. *Matthews,* 247 N. Y. 32.)

The opinion of the surrogate rests his decree in part upon the argument that the removal of assets from this State should not defeat the jurisdiction of our courts. The executrices, however, can hardly be said to have acted wrongfully in removing assets to their own jurisdiction (10 A. L. R. 277), especially with the consent of the taxing authorities of New York. Even if the act were regarded as wrongful, however, it would afford no basis for giving a judgment *in rem* in a situation where no lien was claimed upon the removed assets and no right of property in them asserted. The situation is not analogous to the cases which refuse to recognize the power of the laws of a foreign State to divest title to personalty against the will of the owner after the unauthorized removal of the property into that State. (*Edgerly* v. *Bush,* 81 N. Y. 199; *Taylor* v. *Boardman,* 25 Vt. 581; Lord Chief Justice COCKBURN in *Cammell* v. *Sewell,* 5 H. & N. 728, 738.) In the case at bar the local creditor had no title to or lien on the assets of the decedent. He had at most the privilege to reduce them to possession by legal process. When the assets were removed by the domiciliary executrices that privilege became futile. To hold ancillary administration dependent on the situs of the res at the time of the testator's death would lead to undesirable practical results. For example, a debt is, for the purpose of ancillary administration, situated at the residence of the debtor. (*Fox* v. *Carr,* 16 Hun, 434; 5 R. C. L. 930.) We should be loath to hold that the debt might still be administered in this State though the debtor had, subsequent to the creditor's death,

removed his residence to another State. The fact that the assets were removed should not be a basis of jurisdiction.

We concur in the well-reasoned opinion of Surrogate ROLLINS in *Townsend* v. *Pell* (3 Dem. 367), which held where there are no unadministered assets belonging to the estate within the jurisdiction of the State at the time of the application for ancillary letters, the surrogate will decline the exercise of a jurisdiction which is necessarily futile. This view finds further support in the dictum of DANFORTH, J., in *Matter of Shaw* (81 Me. 207, 225; 16 Atl. 662, 666). He said: " If he had left assets at his decease and all had been removed, or legally disposed of, before the date of this petition, it would furnish no reason for the appointment of an administrator at this time."

The order appealed from should be reversed, with ten dollars costs and disbursements, and the application denied, with ten dollars costs, and proceeding remitted to the surrogate of the county of New York for further action in accordance with this opinion.

DOWLING, P. J., MERRELL, FINCH, and McAVOY, JJ., concur.

Order reversed, with ten dollars costs and disbursements, and motion denied, with ten dollars costs, and proceeding remitted to the surrogate of the county of New York for further action in accordance with opinion.