Hugo EMMERICH as Ancillary Administrator with the Will annexed of Albrecht Ostwald, also known as Albert Ostwald, deceased, Plaintiff,

v.

Robert MAY, Hendrik P. Rahusen and Maximilian E. Fuld, copartners doing business as Lippmann, Rosenthal & Co., and J. P. Morgan & Co., Incorporated, Defendants.

United States District Court
S. D. New York.
April 22, 1955.

**428**

Hugo Emmerich, New York City, pro se.

Abberley, Kooiman & Amon, New York City, for defendant, Lippmann, Rosenthal & Co., Henry F. Werker, Pieter J. Kooiman, New York City, of counsel.

IRVING R. KAUFMAN, District Judge.

This is an action by the ancillary administrator, appointed in New York, of the estate of Albrecht Ostwald, deceased, against the banking partnership of Lippmann, Rosenthal & Co.[1] Plaintiff has brought this action to obtain possession of certain securities which are held on behalf of one Harry Ostwald by the defendant in its deposit account with J. P. Morgan & Co. Plaintiff claims that the securities were the property of the decedent at the time of his death, and, therefore, as ancillary administrator he is entitled to possession of them. Defendant denies that plaintiff has title or is entitled to possession. Both parties now move for summary judgment.[2]

The following facts are not the subject of dispute between the parties:

The decedent at the time of his death, on or about May 7, 1943, was domiciled in the Netherlands. The securities[3] were owned by the decedent at the time of his death, and were situated in New York in an account of the decedent's bank, Bankierskantoor Albert Graef N. V. (hereafter "Graef N. V.") with the firm of Loeb, Rhoades & Co., New York (hereafter "Loeb"). Apparently, sometime thereafter, the decedent's account with Graef N. V. was transferred to the name of Harry Ostwald, who is concededly decedent's sole heir under Netherlands law. How the account in Graef N. V. was transferred from the name of the decedent to the name of Harry Ostwald does not appear from any of the affidavits. In any event, on April 23, 1947, pursuant to a Netherlands foreign exchange control license procured by Harry Ostwald, the securities were transferred from the account of Graef

---

1. J. P. Morgan & Co. is no longer a party to this action. Defendant Lippmann, Rosenthal & Co. is the sole remaining defendant in the action.

3. The American securities in question in the instant case are the product of various transactions with shares in other American corporations. The parties have not sought to distinguish between the original shares and their present product for the purpose of pointing up differences in legal consequence.

N. V. with Loeb to the defendant's account on behalf of Harry Ostwald with Loeb. From April 23, 1947 to date, the securities have been in the account of the defendant on behalf of Harry Ostwald with either Loeb or J. P. Morgan & Co. From at least April 23, 1947 to the present date, Harry Ostwald has dealt with the securities in a manner consistent with absolute ownership. On March 11, 1952, the plaintiff was appointed "ancillary" administrator of the estate of the deceased by the Surrogate of New York County. No other legal representative of the deceased has ever been appointed at his domicil or at any other place.

■ Under the law of the decedent's domicil, the Netherlands, title to an individual's estate vests in his heirs by operation of law immediately upon his death. There is no provision for the appointment of an administrator, but the heir takes possession subject to the claims of creditors and to the duty to pay taxes.[4] Therefore, the defendant contends that under the applicable law of the decedent's domicil, his sole heir, Harry Ostwald, was entitled to immediate possession of the securities, and that Harry Ostwald's actual control in New York over the securities for over four years before the appointment of plaintiff as ancillary administrator completed the process of vesting full title and possession in Harry Ostwald. Moreover, the defendant urges that since the plaintiff in his petition for ancillary letters before the Surrogate alleged that "there are no creditors of the decedent within the State of New York" and alleged that the sole assets of the estate within the State were the securities here in question, there is no necessity for administration of the securities.

On the other hand, plaintiff contends that the full title in and right to immediate possession of the securities which decedent had at the time of his death not only vested in plaintiff as administrator as of the time of his appointment but such title and right to possession in plaintiff "related back" to the time of decedent's death under familiar principles of New York law. Therefore, plaintiff urges, the acts of control over the securities by Harry Ostwald since 1947 could not operate to nullify plaintiff's (decedent's) "prior" title and right to possession. Moreover, plaintiff claims that there is necessity for administration of the securities because the applicable estate taxes remain unpaid[5], and that, in any event, the defendant cannot collaterally question the "necessity" for administration of the securities after letters have been granted by the Surrogate for that specific purpose.

■■ An essential distinction in the conflict of laws must be made at the outset if the equally forceful contentions of the parties are to make any sense. The persons to whom the assets of a decedent are to be eventually *distributed* are selected by the law of the decedent's domicil. On the other hand, the *administration* of assets (before their final distribution to the heirs selected by the domiciliary law) within a state is governed by the law of that state.[6]

4. This appears, without contradiction, in the affidavit of an expert on the Netherlands' law included in the defendant's moving papers.

5. Plaintiff also states in his affidavit that "he sued a debtor of the decedent in the Municipal Court of the City of New York." It is not clear whether this refers to the securities here involved.
    Plaintiff has also filed a provisional estate tax return.

6. The Court has assumed, *for the purposes of this motion only*, that the legal situs of the securities is New York because the paper shares were physically present here at all relevant times. Neither party has offered evidence as to the state of incorporation of any of the corporations whose securities are here in question nor have they pointed to any facts which indicate that the situs of the obligations were in any country or state other than New York. In view of the disposition of their respective motions, neither party is bound by their failure to offer such evidence and may offer it at the trial if such evidence can alter the legal results here reached. See Restatement, Conflict of Laws, p. 561, secs. 49–53.

430

■■ "The process of realizing the movable assets of an estate and paying out of them debts and other claims against the estate is administration. The division of what remains is distribution." Restatement, Conflict of Laws, Sec. 303 and comments a. and b.; Introductory Note, Chapter 11, p. 559. The distinction is somewhat analogous to the distinction between "substance" and "procedure" in the conflict of laws. The forum's procedural rules determine the point in time when the substantive rules of another state are to be permitted to operate.

■■ Applied to the facts here, the law of the decedent's domicil is operative to select the eventual distributee of his estate, Harry Ostwald, but cannot *ipso facto* give him the right to the immediate possession of chattels situated in the forum which are put under administration by the forum. New York, for administrative purposes only, granted to its administrator the right to immediate possession of chattels situate within its borders. Restatement, supra, sec. 300. The administrator, whenever appointed, has this right as to all chattels owned by the non-resident decedent at the time of his death by virtue of the "relation back" fiction. See In re Brann's Will, Sur.Ct.1933, 148 Misc. 310, 265 N.Y.S. 362; Dunphy v. Callahan, 1st Dept.1908, 126 App.Div. 11, 110 N.Y.S. 179, affirmed, 1909, 194 N.Y. 587, 88 N.E. 1118. Defendant contends, however, that under the Netherlands' law Harry Ostwald is given duties equivalent to that of a domiciliary administrator, and, that by virtue of his control over the securities within this jurisdiction before the appointment of plaintiff as local administrator, he is entitled to possession as against the plaintiff. In the first place, Harry Ostwald has never purported to *administer* the securities. The estate taxes still remain unpaid. Secondly, a local administrator is entitled to the surrender of any chattels which are in the possession of a foreign administrator at any time before their removal from the state. Restatement, supra, Secs. 474, 481; cf.

In re Rogers' Will, 1st Dept.1929, 225 App.Div. 286, 232 N.Y.S. 609, affirmed 1930, 254 N.Y. 592, 173 N.E. 880. Finally, the fiduciary controls exerted by the domicil, the Netherlands, if any, over its "representative", Harry Ostwald, are so remote in space and time as to be nonexistent.

■ Defendant's contention that there is no "need" for administration in New York cannot be raised in this Court. The determination as to the necessity or propriety of administration over the New York assets of a non-resident is completely within the discretion of the Surrogate. See In re Merrill's Estate, Sur.Ct.1946, 188 Misc. 441, 64 N.Y.S.2d 241, and cases cited therein. By his grant of letters to the plaintiff, the Surrogate has determined the propriety of such administration. This determination cannot be collaterally attacked in the New York State courts, and *a fortiori* in the federal courts, unless the Surrogate had no jurisdiction over the assets. See McNamara v. Penner, Sup.Ct.1953, 123 N.Y.S.2d 576, and cases cited therein.

Although it would appear from the foregoing that plaintiff is entitled to summary judgment, the defendant in its answer and affidavits, has raised certain material issues of fact which must be resolved at the trial.

Defendant, in its answer and affidavits recites the following facts which plaintiff strenuously contests in whole or part in his affidavit:

One Ida Devos-Cohn, prior to May 10, 1940, established an account with the defendant in the amount of $10,841. In September of 1946, Harry Ostwald demanded payment of this account on the ground that he was Ida Devos-Cohn's sole heir through his mother. He presented a "Certificate of Heirship" which indicated that if Ida Devos-Cohn died before his mother, the latter would be her sole heir. The money was transferred to Harry Ostwald's account on his representation that his mother survived Ida Devos-Cohn, when he knew the facts to be the contrary. In any event, the other

heirs of Ida Devos-Cohn are claiming against the defendant, which pursuant to its account agreement with Harry Ostwald, asserts a lien against the securities here in question in order to secure itself against these claims.

Usually a creditor of a distributee cannot assert his rights as against the decedent's administrator in an action by the latter to collect the estate's assets. The claims of creditors of a distributee must await the completion of the administration of the estate, at which time the assets are first applied to defray administrative expenses and taxes and only then become available to the distributees and their creditors. See In re Muzante's Estate, Sur.Ct.1944, 49 N.Y.S.2d 823, 826. However, this rule is inapplicable where the letters of administration were obtained by fraud or collusion. Cf. Hoes v. New York, New Haven & Hartford R. Co., 1903, 173 N.Y. 435, 66 N.E. 119; Griffith v. Bank of New York, 2 Cir., 1945, 147 F.2d 899. Defendant, in its answer and affidavits, attempts to make out just such a case. The merits of this charge must, of course, await consideration at the trial. Defendant claims that plaintiff, who was appointed administrator c. t. a. upon the sole designation of Harry Ostwald, is merely the alter ego or cloak for Harry Ostwald, and that the only purpose that was intended to be served by the appointment of the plaintiff as administrator was to obtain the securities free from the lien of the defendant[7] and from the Netherlands' exchange control regulations. Defendant contends that the "administration" here amounts to no more than the payment of estate taxes which Harry Ostwald, without such administration, would be obligated to pay. In other words, the administration is and was intended to be an empty legal shell for the furtherance of purposes purely personal to Harry Ostwald. Whether one such alleged purpose—the evasion of foreign exchange control regulations—was illegal depends upon the Netherlands' law applicable to the instant case, which foreign law must be proven as a fact at the trial,[8] insofar as such law is recognized under the conflict-of-laws rules of New York.

In addition to the motions for summary judgment by both parties, defendant has moved for leave to amend its third affirmative defense (relating to the lien claim based upon the Ida Devos-Cohn estate) so as to denominate it as a counterclaim to be asserted against Harry Ostwald. This claim is so inextricably bound up with the fraud defense that, if jurisdiction over Harry Ostwald *in personam* or *in rem* can be obtained, it should be litigated jointly with the main action.[9] F.R.C.P. 13(a), (f) and (h), 28 U.S.C.A.; see United Artists Corp. v. Masterpiece Productions, Inc., 2 Cir., 221 F.2d 213. Therefore, the Court will permit the amendment.

The motions for summary judgment are both denied. Defendant is granted leave to amend its answer so as to denominate the third affirmative defense a counterclaim. Settle order.

7. From the papers on this motion it appears that Harry Ostwald is a resident of Virginia.

8. Those facts do not appear in any of the affidavits submitted on this motion.

   As against the administrator, defendant has interposed another defense apart from the fraud defense which is based solely upon the Netherlands' foreign exchange laws. The same analysis as to proof of foreign law applies to this defense.

9. The defendant has withdrawn its motion, without prejudice, to permit service upon Harry Ostwald, a non-resident, and the Court, therefore, does not reach the jurisdictional issues. See 2 Moore, Federal Practice (2d Ed.) 1007 et seq. 1025.