Joseph A. Cox, S.
Two persons contingently interested in the fund which is the subject of this accounting proceeding, move to vacate the decree which granted ancillary letters of administration c. t. a. to the accounting party, on the ground that this court had no jurisdiction to issue such letters. It is conceded that the testator was domiciled in Spain and that all of the property now in the hands of the ancillary administrator c. t. a. was brought into the State and County of New York after the testator’s death. The moving parties contend that at the time ancillary letters issued, such property did not “ [remain] unadministered” within the meaning of subdivision 3 of section 45 of the Surrogate’s Court Act, and hence this court acted without jurisdiction.
The testator died in Spain on May 7, 1921. His will, which was duly established in Spain, gave the residue of his estate to his wife for life and upon her death, to his heirs. A second instrument which is dated July 6, 1919, is in the nature of a codicil to his will, as we use that term. It confirms the will insofar as it disposes of property during the widow’s lifetime but makes different provisions for after her death. It directs that his estate shall remain under administration for a period of 40 years after his wife’s death and shall be distributed among certain collateral relatives who shall be then living and who shall meet specified qualifications. Provision is made for disbursement of income during that period. In his will the testator appointed one executor to act with his wife in making inventory, appraisal, liquidation and division of his estate and inventory, appraisal and liquidation of the conjugal partnership. He appointed three different executors in his codicil to administer the estate after her death. The testator’s wife died November 8, 1948.
There has been litigation in Spain with respect to the instrument which we have referred to as the codicil. The latest judgment, dated December 9, 1955, dismissed on the merits an attack against that instrument by certain of the present moving parties. The executor named in the will is now dead. One executor named in the codicil is dead but a successor has been appointed pursuant to the terms of the will. All three of the now functioning executors nominated the ancillary administrator c. t. a. to receive letters in this jurisdiction. The *532 ancillary administrator c. t. a. has collected the property in this jurisdiction, is now accounting for his acts and transactions and is ready to transmit the assets to the domicile. The moving parties clearly have no present right to possession of the assets, their status being that of persons with a contingent interest. Nevertheless, they challenge the jurisdiction of this court in this proceeding and in the proceeding granting letters, and that question must first be determined.
The moving parties rely upon the decision in Matter of McCabe (84 App. Div. 145, affd. 177 N. Y. 584). In that case, the intestate died at his domicile in Pennsylvania where all of his property was located. An administrator was duly appointed in that State. Among the assets which the administrator collected in Pennsylvania were 10 railroad bonds which he then deposited in safe-deposit vault in a bank in Binghamton, N. Y., that being the bank most convenient for that purpose. When the Pennsylvania administrator attempted to remove the bonds for production in litigation in that State, he discovered that another brother had obtained letters of administration in Broome County on the allegation that the bonds had been brought into New York after the death of the intestate and remained unadministered. An application was made by the domiciliary administrator to revoke the letter's granted in this State. The Appellate Division said: “ The question is here directly presented whether personal property temporarily within a county of this State, in the possession of a domiciliary administrator, is sufficient to give to the Surrogate’s Court of that county jurisdiction to appoint an administrator of the goods, chattels, and credits of a decedent in such county ’ ’ (p. 148). The court construed the statute to mean that our courts have no jurisdiction to grant original letters ‘ ‘ when the only personal property in this State is in the hands of a duly appointed legal representative of the deceased” (p. 149). It is apparent that the court also placed its decision revoking the letters on grounds of comity and public policy (p. 150).
The factual situation alleged by the moving parties does not bring this case within the principle of the cited, decision. The assets collected by the ancillary administrator c. t. a. were derived from property which had its situs in .Cuba at the time of the testator’s death. In part they represented an indebtedness owed to the decedent by a Cuban corporation, and in part, his interest in a Cuban partnership. The widow’s community property interest in these assets was allocated to her. The balance of the corporate obligation was apportioned to the estate of the decedent and set up in a special account in the *533 corporate books. The estate’s share of the proceeds of the partnership was also added to the same account on the corporate books, so that the corporate obligation to the estate now encompassed the interest in the former partnership.
The executor named in the will, Higinio Cuesta, furnished the Cuban corporation with such documents as it required to complete the transaction. He, as executor, and the widow, individually and as life beneficiary, appear to have completed these transactions to their mutual satisfaction. Thereafter the corporation paid directly to the widow income from the estate property. In 1925 the Cuban corporation was dissolved, the account was taken over by The Tuinucu Sugar Company, a New York corporation, which continued to pay the widow the income thereof until her death in 1948. In 1951 another related New York corporation took over the obligation.
The moving parties claim that the domiciliary executor assumed dominion, control and possession of the property in 1924; that although the account was set up and carried on the books in the name of “ Estate of Pedro Alonso Bobes ”, it was thenceforth held for the joint account of the widow and the executor; and that being in the possession and under the dominion of the domiciliary exectuor, the property no longer “ remains unadministered ”.
One difficulty with the theory of the moving parties is that the original executor had died shortly after the widow and without taking any of the assets from the possession of the New York corporation. If, as the moving parties assert, the assets were held for the joint account of the widow and executor during the widow’s lifetime, and for the executor alone after her death, the executor’s death posed a serious problem to the corporation with respect to distribution of the fund. So serious was that difficulty that in point of fact the corporation would not deliver the funds except under the protection of a court of competent jurisdiction. An action in the Supreme Court had to be instituted by the ancillary administrator c. t. a. against the corporation in which the present moving parties were allowed to intervene, and the delivery of the assets to the ancillary administrator c. t. a. was pursuant to a stipulation of the parties to the action. That stipulation would, in and of itself, seem to be determinative of the issue here, except that the stipulation reserved to the moving parties the right to assert in this court all of the claims, contentions and defenses made in their pleadings in the Supreme Court, and that reservation included the challenge to the jurisdiction of this court. It is strange indeed to consent to delivery of property to a fiduci *534 ary who has no valid existence and to consent to try one’s claims before a court which has no jurisdiction. However, even giving to the stipulation the effect which the moving parties insist, the significant facts are that the original executor was dead, the property was actually located in New York, and the executors now functioning in the domicile could not gain possession of the property without a lawsuit in this State. Prior to the enactment of section 160 of the Decedent Estate Law, the general rule was that a foreign executor could not sue or be sued in his representative capacity within the State save in exceptional circumstances. (Seventeenth Annual Report of N. Y. Judicial Council, 1951, p. 161.) Section 160 modified that rule with respect to executors duly appointed within the United States, but even in such eases the superior status of a New York ancillary fiduciary is recognized in the statute. The Spanish executors chose to designate a qualified person to obtain ancillary letters in New York and to prosecute such proceedings as were requisite to gain possession of the New York assets. It can hardly be said with any degree of common sense that under such circumstances the assets in New York were not “ unadministered” at this point of time. The property was no longer in the possession or under the control of a domiciliary fiduciary; it was no longer possible for the estate representatives to get possession of the property except through ancillary proceedings; the domiciliary executors are the very ones who sought the issuance of ancillary letters. Hence we are not dealing here with property temporarily in the possession of the domiciliary executors, but rather with property in the possession of a third person who will not deliver it even to the estate representative without litigation.
In their argument of the pending motion, the moving parties represent themselves as having an interest under the second will (or codicil) “ although contingent, of course, upon their surviving the trust term which has about 30 years more to run ’ ’. The papers in earlier proceedings, some of which are submitted on this motion, contain the assertion that the original executor had in fact actually distributed the Cuban assets to the widow and the heirs, with the result that the assets were completely distributed and no longer a part of the estate. The present record does not justify a finding of such actual distribution by the executor. Mr. Powell, in his testimony, attempted to interpret the executor’s action as setting property apart for the heirs, but he took the names of particular heirs from corporate records rather than from the executor’s documents. The letter from counsel to which he refers, quite clearly instructs *535 the corporation to hold the account against the joint order of the widow and executor unless the executor should determine to allocate “ specific property ” to particular heirs, and in that case such property should be held against the joint order of the widow 11 and the particular heir to whom the said balance has been allocated in the said statement.” It is clear from the references to the document of partition that the executor never in fact attempted to allocate specific property to particular heirs. Moreover, he had no power or authority to make such definitive distributions at that time because the property must remain under administration in Spain for some period of time in the future unless the courts of that jurisdiction decide otherwise. There is, therefore, no merit to the claim that distribution has in fact been made to the heirs. In any case, the moving parties appear now to make no insistence upon any such claim.
The court holds that it had jurisdiction to issue ancillary letters of administration c. t. a. The motion to vacate the decree for lack of jurisdiction is denied.
Submit order on notice accordingly.