S. Samuel Di Falco, S.
A person claiming to be a creditor of the decedent applies for the issuance to him of ancillary letters of administration. It is conceded that the decedent was domiciled in Ohio, and that letters of administration were issued by a competent tribunal of that State to John B. Freiden. The petition alleges that the decedent left personal property in New York consisting of “ Royalty contracts of United Music Corporation”. The Ohio administrator submitted an answer on *254 September 18, 1962, alleging that there are no assets of the decedent within the State of New York. He does admit the contract between the decedent and United Music Corporation, “ a publisher in the County of New York ”, but he makes the somewhat ambiguous allegation that “no revenue or income” was at that moment due the estate except “ some writers’ royalties.” He also asserts that there is no need for ancillary administration because, in his status as domiciliary administrator, he has been collecting the royalties due under that contract, and had experienced no difficulty in the prompt collection of them. He denied knowledge or information as to the validity of the petitioner’s claim, and he requested that if ancillary letters are to be issued, they be issued to him. The Public Administrator asserted that his right to letters were superior to that of the petitioner and requested the issuance of letters to him. During the proceeding the petitioner conceded the superior right of the Public Administrator to letters. The matter was placed upon the calendar for hearing of the contested issue as to the existence of any asset in New York County.
After the matter was placed upon the hearing calendar, the Ohio administrator attempted to avoid meeting that issue by going through a form of sale of all the decedent’s rights under the contract. In October, 1962 he applied to the Ohio court for permission to sell all of the decedent’s interest in the musical composition “ Huckle Buck ”, which is the composition published by United Music Corporation, and he obtained judicial permission to sell it “ at the best price obtainable No mention was made in that application of the proceedings in this court or of the petitioner’s claim. On October 31, 1962, the Ohio administrator signed an instrument which purports to transfer to a third person all of the decedent’s interest in the composition, the copyright thereto, and any extension and renewal. The consideration recited in that instrument is $2,500 and payment of that sum to the Ohio administrator was proven.
An officer of the United Music Corporation was called as a witness by petitioner. It appears that the decedent had assigned to that corporation all of his interest in the composition, and the corporation agreed to pay specified royalties. Royalties were regularly paid during the decedent’s lifetime, and up to the end of June, 1961. In August, 1961, the sum of $2,137.68 was paid to the estate, presumably for the period ending June 30. The witness testified that royalties were being held by the corporation and that for the period July 1, 1961 to December 31, 1962, the accrued royalties amounted to $2,729.73. There was a lack of agreement among counsel as to how long the copyright still has *255 to run, and definitive proof on that question was not submitted. It appears, however, that the copyright is still in existence. We do not have proof of the precise amount of accrued royalties on October 31, 1962. That figure was always obtainable by the administrator from United Music. The only figure near that date is the $2,729,73 accrued on December 31, just two months later. Thus it is clear that in this hasty sale, the Ohio administrator sold for $2,500 the estate’s interest in accrued royalties of an approximately equal sum and also all of the estate’s future interests in the musical composition, the royalties, the copyright and any extension or renewals. If the sale is a bona fide sale, it was an incredible bargain for the purchaser, who not only bought nearly $2,800 at a discount but all rights to future royalties.
The petitioner’s claim is based upon an alleged contract with the decedent whereby the latter assigned to him 30% of any and all moneys which the decedent received in connection with the musical composition “ Huckle Buck.” The petitioner is a resident of New York. Patently the assignment or purported assignment of the decedent’s interest was intended to impede or defeat the petitioner’s claim. The question is whether, under all of the circumstances here, there is any asset within this county sufficient to give this court jurisdiction to issue ancillary letters.
In Matter of Rogers (225 App. Div. 286, affd. 254 N. Y. 592), the petitioner was the plaintiff in a pending action in which the decedent had been the defendant. He sought the issuance of ancillary letters testamentary in order to have a fiduciary in New York against whom the action could be continued. At the time of his death, the decedent had a bank account in New York and a membership in the New York Curb Stock Exchange. However, the fiduciaries appointed at his domicile collected the bank account, sold the Curb membership, and removed all proceeds from New York prior to the institution of the proceeding for ancillary letters, with the result that at the time of the application for ancillary letters there was in fact no property of the decedent within the State of New York. In holding that the Surrogate’s Court had no jurisdiction to grant ancillary letters testamentary under such circumstances, the Appellate Division said (p, 289): “ A proceeding for ancillary administration is, however, not strictly a proceeding in rem. Although it has been said that a proceeding to probate a will is a proceeding in rem 1 in form and substance, upon the will itself ’ 9 * s a proceeding for ancillary administration is directed against assets within the State. The nearest analogy is an attachment, a proceeding quasi in rem, where ‘ only so far as the judgment may be satisfied from such property did it bind the defendant and *256 it imposed no personal obligation upon him.’ * * * So in the case of ancillary administration the decree can have no effect except as it may be satisfied by property within the reach of the process of our courts, since ‘ the constitutional requirement of due process of law precludes the Legislature from providing generally for continuing actions for judgments in personam against the foreign executors. ’ * * * Ancillary administration in this State without assets presently here for administration would be mere brutum fulmén.”
The ruling in Matter of Rogers merely applies well-settled fundamental principles of estate administration. “ Jurisdiction is a matter of power ”, as Mr. Justice Holmes said in Lamar v. United States (240 U. S. 60, 64). Every State has the power to deal effectively with property within its borders, and its right to deal with such property is generally recognized by other States. Professor Page states the rule clearly and succinctly: “ If a thing is within the boundaries of a state, the state, under our theory of jurisdiction and governmental power, may decide as to the title to such thing, the disposition to be made of it, and the like. At our law, the order thus made by a competent authority of the state, either as to the title to the thing or as to the disposition to be made of it, may be conclusive as against all the world. There may be a few exceptions to the actual working of this principle; but it is, in the main, correct. * * * It is the presence of the thing within the state which confers jurisdiction in rem.” (3 Page, Wills [Bowe-Parker Rev.], § 26.2, p. 5; see, also, Riley v. New York Trust Co., 315 U. S. 343, 349-350.)
In allocating to the courts of the various counties the State’s general jurisdiction over the property of nonresident decedents, the Legislature has revealed its recognition and acceptance of these fundamental principles of jurisdiction. Thus section 45 of the Surrogate’s Court Act, which establishes the venue of proceedings in the Surrogates’ Courts (see Matter of Connally, 34 Misc 2d 132, 134-136), authorizes court action on the estate of a nonresident only if there be property within the State on which its decrees may operate. Section 47 codifies the generally accepted rule that, for jurisdictional purposes, a debt or obligation owed to the decedent has its situs at the domicile of the debtor or obligor. (3 Beale, Conflict of Laws, § 467.3; Restatement, Conflict of Laws, § 467, Comment g.) “ This section ”, said the Court of Appeals, “ embodies what has long been case law in this State * * * The main reason on account of which the New York law regards the residence of the debtor as the place where the asset is situated, instead of having *257 its situs where the creditor resides, is that otherwise it would be impossible to obtain judgment against the debtor who has to be sued in a jurisdiction where he can be found.” (Matter of Riggle, 11 N Y 2d 73, 76-77.)
In the case now before the court, United Music Corporation still holds the accrued royalties and has title to the music composition and the copyright. Whatever interest this estate may have in the royalties, accrued and accruing, it takes through this New York corporation. The assignee of the Ohio administrator conducts a music publishing business in this State and he, too, is within the reach of the process of our courts. While the Ohio administrator claims that all of the decedent’s interest in all of that property has been conveyed to another, the petitioner challenges the alleged transfer. There can be no doubt, under the authorities, that the jurisdiction of the State of New York and of this court extends only to the decedent’s interest in this New York property and that a New York decree cannot reach or bind any property outside this State. But, it is equally well settled that New York, and New York alone, has the power to reach this New York property, and to render a valid and binding decree in respect of this property. It can obtain jurisdiction also over the person of the New York corporation and other residents of this State.
The respondent quite correctly says that this court cannot set aside the sale of the property in the present proceeding, to which the purchaser is not a party. This court is not now required to pass upon the legality of the sale or the title of the assignee. There is no doubt of the general power and authority of an administrator to sell the personal property of his intestate (Matter of Heinze, 224 N. Y. 1, 8) or of the authority of a foreign administrator to sell and assign assets of his intestate which have actual situs within this State (Petersen v. Chemical Bank, 32 N. Y. 21, 44-45; Scher v. Adams, 220 App. Div. 309). There can be no doubt either of the right of an estate to have set aside a sale of assets which is fraudulent as to creditors. The United States Supreme Court has said: “ The executor, though holding the title to the personal assets, is not absolute owner of them. * * * He holds them in trust to pay the debts of the deceased, and then to discharge his legacies; and, as in all other cases of trust, he is personally responsible for any breach of duty. And property thus held, acquired from him by third parties with knowledge of his trust and his disregard of its obligations, can be followed and recovered. The law exacts the most perfect good faith from all parties dealing with a trustee respecting trust property. Whoever takes it for an *258 object other than the general purposes of the trust, or such as may reasonably be supposed to be within its scope, must look to the authority of the trustee, or he will act at his peril.” (Smith v. Ayer, 101 U. S. 320, 327; see, also, American Equitable Corp. v. Parkhill, 252 App. Div. 260.)
It is not, therefore, essential that the court now decide whether the estate could obtain a judgment in its favor against the publisher and the alleged purchaser. It is sufficient that the estate may have a claim against them. When the only asset in this State of a deceased person or his estate is a cause of action against a New York resident, it is not a necessary basis for jurisdiction to issue letters that the cause of action be first proved. (See Matter of Riggle, 11 N Y 2d 73, supra.) It is enough that one can be asserted.
The respondent also contends that the court lacks jurisdiction in this case because the property in New York is not property that ‘ ‘ remains unadministered ’ ’ within the meaning of section 45 of the Surrogate’s Court Act. The case cited by the respondent (Matter of Tripp, 29 Misc 2d 153) and the case relied upon in that decision (Matter of McCabe, 84 App. Div. 145, affd. 177 N. Y. 584) dealt with assets of a nonresident decedent which were brought into the State of New York by the domiciliary executor. Both decisions make it clear that the words “ and remains unadministered ”, as used in section 45, refer to the words “ which has, since his death, come into the state” (subd. 2; or “ into that county ”, subd. 3). The property here in question has at all times been within the State. Moreover, the Ohio administrator did not attempt to take possession of this property or to take it under administration, but attempted rather to place it beyond the reach of a New York claimant. The person holding the property is retaining it until a valid judgment determines the rights of the respective claimants. The question that will ultimately have to be decided by the courts of this State is whether the Ohio administrator effectively disposed of the property or whether the estate of the decedent has an interest therein.
The application for the issuance of ancillary letters of administration is, therefore, granted. There has been no attempt to urge any disqualification under section 94 of the Surrogate’s Court Act of the domiciliary administrator, and, therefore, if he wishes to qualify as ancillary administrator letters will be granted to him upon his filing a bond in an amount sufficient to protect New York creditors (Surrogate’s Ct. Act, § 163). The fact that there may be an adversity of interest between the ancillary administrator and the individual is not sufficient to *259 disqualify him. (Matter of Foss, 282 App. Div. 509.) As the court pointed out in the cited case, in the event that the apparent conflict of interest should lead to a breach of fiduciary duties, the claimant “ will not be left without remedy ” (p. 513). If the domiciliary administrator should fail to qualify within 10 days from the service upon his attorney of notice of entry of the decree herein, ancillary letters of administration will be granted to the Public Administrator.