**In re SKI TRAIN FIRE IN KAPRUN, AUSTRIA ON NOVEMBER 11, 2000.**

**No. MDL 1428, 01 Civ. 3103, 01 Civ. 6554, 01 Civ. 10776, 02 Civ. 2492.**

United States District Court, S.D. New York.

Oct. 9, 2003.

As Corrected Oct. 14, 2004.

Edward D. Fagan, Fagan & Associates, Livingston, NJ, Robert A. Swift, Hilary Cohen, Kohn, Swift & Graf, PC, Philadelphia, PA, Jay J. Rice, Randee Matloff, Nagel, Rice, Dreifuss & Mazie, LLP, Livingston, NJ, Kenneth Nolan, Christina Fry, Speiser, Krause, Nolan & Granito, New York City, Leslie N. Reizes, Reizes Law Firm Chartered, Delray Beach, FL, for Plaintiffs.

Frederick W. Reif, Debra Tama, Riker, Danzig, Scherer, Hyland & Perretti, LLP, New York City, for Defendants Waagner–Biro Binder AG in Abwicklung; Waagner–

Biro Binder Beteiligungs AG; WB Holding AG; and Binder + Co AG.

E. Gordon Haesloop, Bartlett, McDonough, Bastone & Monaghan, LLP, Mineola, NY, for Defendant Omniglow Corporation.

Thomas D. Yannucci, Christopher Landau, James F. Basile, Brant W. Bishop, Grant M. Dixton, Kirkland & Ellis, Washington, DC, for Defendants Siemens AG and Siemens Corporation.

Arnd N. von Waldow, Reed Smith, LLP, Pittsburgh, PA, Scott S. McKessy, Reed Smith, LLP, New York City, for Defendant Bosch Rexroth Corporation.

Arthur J. Liederman, Matthew B. Anderson, Morrison, Mahoney & Miller LLP, New York City, for Defendant Bosch Rexroth AG.

## CORRECTED OPINION AND ORDER

SCHEINDLIN, District Judge.

Almost three years ago, a ski train caught fire in a tunnel of the Kitzsteinhorn Mountain in Kaprun, Austria,[1] killing 155 passengers and crew members. Plaintiffs, the parents, spouses, and grandparents of eight Americans who died in the fire,[2] have sued train and train part manufacturers and operators for damages, declaratory, and injunctive relief. Plaintiffs allege that the train and tunnel were improperly designed, constructed, and maintained, as well as negligently operated and promoted. Plaintiffs additionally allege, among other things, that defendants fraudulently misrepresented the safety of the train and tunnel and intentionally interfered with the victims' rights.

1. The train consisted of two counter-balanced funicular cars; one going up the mountain and the other coming down the mountain. *See* Plaintiffs' Motion For Class Certification of Liability Issues ("Pl.Mem.") at 2.

2. Plaintiffs John and Suzanne Habblett, Clair Goodridge, Harold and Carole Baker, Rudolph and Angela Kern, and Karen Filkil bring this action on behalf of the estates of Jennifer Habblett Goodridge, Michael C., Michael J., and Kyle Goodridge, Carrie Baker, Erich Kern, and Paul and Benjamin Filkil, respectively.

3. This Court's jurisdiction is based on diversity of citizenship pursuant to 28 U.S.C. § 1332. *See In*

Plaintiffs' actions against the various defendants have been consolidated before this Court for pretrial purposes by the Judicial Panel on Multidistrict Litigation ("MDL Panel").[3] Plaintiffs now seek class certification, pursuant to Federal Rules of Civil Procedure ("Rules") 23(a), 23(b)(2) and (3), with respect to *liability issues only*. The putative class is defined as "[a]ll heirs, beneficiaries and personal representatives" of *all* individuals who died in the fire "who consent to inclusion."

Defendants Siemens AG, Siemens Corporation, Bosch Rexroth Aktiengesellschaft, Bosch Rexroth Corporation, Waagner–Biro Binder AG in Abwicklung, Waagner–Biro Binder Beteiligungs AG, Waagner–Biro Holding AG, Binder + Co. AG, and Omniglow Corporation (collectively, "defendants") oppose certification on a number of grounds.[4] For the reasons set forth below, plaintiffs' motion is conditionally granted.

## I. STANDARD FOR CLASS CERTIFICATION

Rule 23 sets forth the requirements for bringing and maintaining a class action in federal court. *See* Fed.R.Civ.P. 23; *see also infra* Part III. " 'In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.' " *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 133 (2d Cir.2001) (quoting *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974)). While this Circuit has "directed district courts to apply Rule 23 according to a liberal rather than a restrictive interpretation," *In re NASDAQ Market–Makers Antitrust Litig.*, 169 F.R.D. 493, 504

*re Ski Train Fire in Kaprun, Austria on November 11, 2000 (Waagner–Biro Defendants)*, 257 F.Supp.2d 717, 724–26 (S.D.N.Y.2003) ("*Kaprun Waagner*") (finding complete diversity of citizenship of all potential class representatives).

4. On May 12, 2003, this Court ruled that any defendant who opts not to participate in the class certification briefing because of a pending jurisdictional motion—*e.g.,* Gletscherbahnen Kaprun AG—may later move to reopen the issue of class certification to raise a new issue. *See* Transcript of 5/12/03 Conference at 31–32.

(S.D.N.Y.1996) (citing *Korn v. Franchard Corp.*, 456 F.2d 1206, 1208–09 (2d Cir.1972)), a court may not grant certification unless it is satisfied, after "'rigorous analysis,'" that the criteria set forth in Rule 23 are met. *See Dodge v. County of Orange*, 208 F.R.D. 79, 87 (S.D.N.Y.2002) (quoting *General Tel. Co. v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)). Plaintiffs bear the burden of establishing each requirement for class certification. *See Dunnigan v. Metropolitan Life Ins. Co.*, 214 F.R.D. 125, 133 (S.D.N.Y.2003) (citation omitted).

■■ The district court must accept all of the allegations in the pleadings as true on a motion for class certification, and avoid conducting a preliminary inquiry into the merits. *See In re Independent Energy Holdings PLC Sec. Litig.*, 210 F.R.D. 476, 478 n. 5 (S.D.N.Y.2002) (citations omitted). Nonetheless, the decision whether to certify a class "may involve some considerations related to the factual and legal issues that comprise the plaintiff's cause of action." *Dunnigan*, 214 F.R.D. at 133 (internal quotation marks and citation omitted). *See also Daniels v. City of New York*, 198 F.R.D. 409, 413 n. 5 (S.D.N.Y. 2001) (noting that the court need not rely on the bare allegations but "may consider the range of proof necessary to support class certification"). "[A]ffirmative defenses should [also] be considered in making class certification decisions." *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 295 (1st Cir.2000). *See also Castano v. American Tobacco Co.*, 84 F.3d 734, 744 (5th Cir.1996) (explaining that "a court must understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues").

## II. POWER OF COURT TO CERTIFY A CLASS IN A MULTI–DISTRICT LITIGATION

■ Before addressing the specific requirements for class certification, defendants argue that the Court is not statutorily authorized to certify transferred cases as class actions.[5] *See* Defendants' Memorandum in Opposition to Plaintiffs' Motion for Class Certification ("Def.Mem.") at 3–6 (arguing that Section 1407 of Title 28 of the United States Code ("Section 1407") does not grant such authority). Defendants are absolutely wrong.

This Court has jurisdiction, pursuant to Section 1407(a), over all "coordinated or consolidated pretrial proceedings." *In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000*, 175 F.Supp.2d 1379, 1379 (J.P.M.L. 2001) ("MDL Order"). This grant of jurisdiction empowers the Court to "rule[ ] on a wide range of preliminary legal and factual questions," including class certification.[6] 15 Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice & Procedure* § 3866 (2d ed. Supp.1999) ("Fed.Prac. § 3866"); *see also In re Plumbing Fixture Cases*, 298 F.Supp. 484, 494 (J.P.M.L.1968) (noting that the Manual for Complex and Multidistrict Litigation lists the determination of class action issues within the description of pretrial proceedings). In fact, motions for class certification are "particularly suited for decision by the transferee court because it is important there not be a conflict between or among the transferor courts as to how related actions are to be treated." Fed. Prac. § 3866 at 619; *see also In re New York City Mun. Sec. Litig.*, 439 F.Supp. 267, 270 (J.P.M.L.1977) ("[T]here is no reason, in light of the overriding factors here favoring coordinated or consolidated pretrial proceedings in a single district, why the class determinations regarding the [transferred] actions should not be made by the transferee judge. Indeed, the transferee judge's participation in this important pretrial process will better enable [her] to coordinate the pretrial proceedings ...."). If the transferee court did

---

**5.** The complaints in all but the recently transferred and/or filed actions (*e.g.*, the Filkil action) have been consolidated into one class action complaint.

**6.** Once the pre-trial proceedings in this multidistrict litigation are concluded, the actions will be transferred back to the districts in which they were originally brought and tried there as class actions. The actions that were brought in the Southern District of New York will be tried in this Court. No defendant will be required to stand trial in more than one jurisdiction.

not have authority to decide issues of class certification, the determination of whether a suit may proceed as a class action could not be made "[a]s soon as practicable after the commencement of an action brought as a class action," as required by Rule 23(c)(1).[7]

## III. REQUIREMENTS FOR CLASS CERTIFICATION

To be certified as a class under Rule 23, plaintiffs must satisfy all requirements of subsection (a) and must prove that the class is "maintainable" as defined in subsection (b).

### A. Rule 23(a)

■ Rule 23(a) permits one or more members of a class to sue as representative parties only if "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a). Because it is clear that the proposed class meets the first three requirements, and defendants do not seriously argue otherwise,[8] I address only the fourth requirement—adequacy of representation.

■ In order to demonstrate adequate representation, plaintiffs must show that: (1) class counsel is qualified, experienced, and generally able to conduct the litigation; and (2) the named plaintiffs' interests are not antagonistic to those of the proposed class members. *See In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992). The purpose of this inquiry is to discover any conflicts of interest between the class representative and the class, as well as any conflicts or incompetency on the part of class counsel. *See Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 626 n. 20, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). In determining the adequacy of counsel, the court may look "beyond reputation built upon past practice and examine[ ] counsel's competence as displayed by present performance." *In re Towers Fin. Corp. Noteholders Litig.*, 177 F.R.D. 167, 171 (S.D.N.Y.1997) (internal quotation marks and citation omitted).

Defendants challenge both the adequacy of the proposed class representative, Lieutenant Colonel John S. Habblett, and the proposed class counsel.[9] *See* Def. Mem. at 8–12.

---

7. Defendants acknowledge that transferee courts frequently certify classes in MDL cases, but argue nonetheless that these courts lack the authority to do so based on the Supreme Court's "restrictive reading" of Section 1407 in *Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 118 S.Ct. 956, 140 L.Ed.2d 62 (1998). Def. Mem. at 5. *Lexecon* in no way circumscribes a transferee court's ability to certify a class. *See In re New England Mut. Life Ins. Co. Sales Practices Litig.*, 183 F.R.D. 33, 44 (D.Mass.1998) ("Nothing in *Lexecon* and no implication from *Lexecon's* holding indicates that this court may not certify a class" to "advance pretrial preparations so that the transferor courts will not have to repeat, case by case, all the preparation that will have been completed before the MDL cases are remanded."). The case merely limits a court's ability to transfer cases consolidated for pretrial MDL proceedings to itself for trial under 28 U.S.C. § 1404(a). *See Lexecon*, 523 U.S. at 40–41, 118 S.Ct. 956. Thus, there is no reason for this Court to depart from the unanimous legal authority supporting class certification in a multi-district litigation.

8. Defendants state "it is far from clear that plaintiff satisfies all the requirements of Rule 23(a)," but substantively address only the adequacy of representation requirement. Def. Mem. at 7.

9. After the filing of defendants' opposition to class certification, a disagreement arose among plaintiffs' counsel regarding who should be lead counsel and class representative. *See* Plaintiffs' Reply In Support of Class Certification of Liability Issues ("Pl. Reply Mem.") at 6 (stating that the named plaintiffs wish to have only Robert Swift and Jay Rice certified as class counsel—to the exclusion of Edward Fagan—and Habblett certified as sole class representative). Fagan proposes that he be appointed co-lead class counsel with Swift and Rice and that *all* United States plaintiffs be appointed class representatives. *See* 8/4/03 Supplemental Reply Declaration of Edward D. Fagan In Further Support of Class Certification ("Fagan Supp. Dec.") ¶ 7. However, the Bakers and Kerns do not wish to be considered co-class representatives. *See* 8/22/03 Letter to the Court from Rice at 2. Clair Goodridge is willing to serve as class representative with any of the other American plaintiffs, but not by himself. *See* 9/11/03 Letter to the Court from Christina Fry ("9/11/03 Fry Ltr.") at 2. The only other American plaintiff, Filkil, joined the case less than three months ago and has not yet weighed in on the issue. *See* Filkil Complaint, filed in the Eastern District of Texas on June 25, 2003, and transferred to this Court by the MDL Panel on July 11, 2003. In any event, Habblett

With respect to Lieutenant Habblett, defendants argue: (1) that he is not qualified to be the class representative because he lacks standing to assert the claims in the complaint, *see* 10/1/03 Letter to the Court from Brant W. Bishop, counsel for Siemens AG and Siemens Corporation ("10/01/03 Bishop Ltr."); [10] and (2) that Habblett's lack of knowledge about certain aspects of the case and reliance on the advice of counsel make him an inadequate class representative, *see* Def. Mem. at 12 (noting that Habblett lacked "personal knowledge" about the "specific liability claims to be advanced" by potential class members). Defendants further contend that plaintiffs' then-proposed lead counsel, Fagan, lacks the "qualifications and conduct" necessary to effectively represent the interests of the class. *Id.* at 8; *see generally id.* at 8–11 (citing public criticism of Fagan's responsiveness to his clients in prior cases). They also attack Swift and Rice as lacking experience in class' action products liability actions. *See id.* at 10 n. 2.

### 1. Adequacy of Class Representative

#### a. Habblett's Standing

■■■■ Upon certification of a class, a plaintiff seeking to act as class representative must have standing to assert the claims in the complaint against each defendant being sued. *See Martens v. Thomann,* 273 F.3d 159, 173 n. 10 (2d Cir.2001) (citing 3 Newberg on Class Actions § 2.06 (1992)); *Ramos v. Patrician Equities Corp.,* 765 F.Supp. 1196, 1199 (S.D.N.Y.1991) (citations omitted). To have standing, a plaintiff must suffer an actual or threatened injury, thereby satisfying the case or controversy requirement of Article III of the United States Constitution. *See Jaghory v. New York State Dep't of Educ.,* 131 F.3d 326, 329 (2d Cir.1997) (citing *Allen v. Wright,* 468 U.S.

737, 750, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984)). A decision in the plaintiff's favor must provide redress for the alleged injury in order for the injury to be considered actual. *See id.* at 330. Thus, if plaintiff has not suffered a distinct injury that can be remedied by a court, he lacks standing to sue. *See id.*

■■■ In order to determine whether Habblett has standing to sue, the first question that must be addressed is what law applies to Habblett's wrongful death claim. A district court sitting in diversity applies the law of the forum state. *See In re Ski Train Fire in Kaprun, Austria on November 11, 2000 (Bosch Rexroth),* 230 F.Supp.2d 392, 400 (S.D.N.Y.2002) (citations omitted). In an MDL proceeding, "the forum state ... is the district court where the action was originally filed." *Id.* There is more than one forum state here because Habblett brought suit in multiple jurisdictions including New York, Colorado, Florida, Massachusetts, Pennsylvania, and Florida. However, because the majority of the actions were brought in the Southern District of New York, New York choice of law rules apply.

■■■ New York's rules require that a court first determine whether there is a conflict in the laws of the various fora selected by the plaintiffs. If there is a conflict, the court must classify the conflicting laws by subject matter and then look to New York law to determine which state's substantive law applies. *See In re Ski Train Fire in Kaprun, Austria on November 11, 2000 (Siemens AG),* 230 F.Supp.2d 376, 389 (S.D.N.Y. 2002) ("*Kaprun Siemens AG*") (citations omitted).

There *is* a conflict here. Under Texas law, unlike New York and Florida law, a wrongful death action does not have to be brought by

---

refuses to share the responsibility with either Goodridge or Filkil. *See* 9/8/03 Letter to Rice from Habblett ("Habblett Ltr."), attached to 9/11/03 Letter to the Court from Rice (stating that he does not believe Goodridge or Filkil possess "the attributes required ... to be a strong [c]lass [r]epresentative" and therefore "will not accept appointment as co-class representative"). Thus, the only possible class representative at this time is Habblett.

10. Defendants made this argument after briefing on the class certification motion was completed in response to an inquiry by the Court. *See* Transcript of 9/30/03 Conference Call ("9/30/03 Tr."). However, the issue was previously raised by the Waagner defendants in their motion to dismiss, at which time the Court held that the issue was not ripe for determination. *See Kaprun Waagner,* 257 F.Supp.2d at 727.

a person who has been appointed personal representative. *Compare* N.Y. Est. Powers & Trusts Law § 5–4.1. *with* Fla. Stat. § 768.20. Substantive law sounding in tort requires the Court to apply the law of the state which has the greatest interest in the outcome. *See Kaprun Siemens AG*, 230 F.Supp.2d at 390. Because the Last Will & Testament of Jennifer Habblett Goodridge was executed and probated in Texas, that state appears to have the greatest interest in determining who may pursue the claims of her estate. *See Emmerich v. May*, 130 F.Supp. 426, 429 (S.D.N.Y.1955) ("The administration of assets … within a state is governed by the law of that state."); *Thomas v. United Air Lines, Inc.*, 24 N.Y.2d 714, 724, 301 N.Y.S.2d 973, 249 N.E.2d 755 (1969) ("The predominant interests to be served on the issue of damages are those of the states containing the people or estates which will receive the recoverable damages, if any, for their injuries or their decedent's death."). Thus, as the parties acknowledge, Texas law applies to the standing issue.

Texas's wrongful death statute provides, in relevant part, as follows:

(a) An action to recover damages as provided by this subchapter is for the exclusive benefit of the surviving spouse, children, and parents of the deceased.

(b) The surviving spouse, children, and *parents* of those deceased may bring the action or one or more of those individuals may bring the action for the benefit of all.

Tex. Civ. Prac. & Rem.Code § 71.004 (emphasis added). Because Habblett is the parent of Jennifer Habblett Goodridge, he has standing to bring a wrongful death suit even though he is not the personal representative or administrator of her estate.[11]

### b. Habblett's Knowledge of the Case

Class certification may be denied " 'where the class representative[ ] ha[s] so little knowledge of and involvement in the class action that [he] would be unable or unwilling to protect the interests of the class against the possibly competing interests of the attorneys.' " *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1077 (2d Cir.1995) (quoting *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 727 (11th Cir. 1987)). However, the problems alleged must either pertain to issues "central to the plaintiffs' case," or they "must be so substantial that they threaten to undermine plaintiffs' case as a whole." *Harrison v. Great Springwaters of Am., Inc.*, No. 96 Civ. 5110, 1997 WL 469996, at *6–*7 (S.D.N.Y. June 18, 1997); *see also Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193, 201 (S.D.N.Y.1992) (finding class representative adequate even though he was unaware of the nuances of the legal theory in the case).

A review of Habblett's deposition testimony and affidavits reveals that he has a sophisticated understanding of the litigation and has played an active role in its prosecution. *See, e.g.,* 3/11/03 Deposition of John Habblett ("Habblett Dep."), Ex. 5 to Pl. Reply Mem., at 21 (stating that since the commencement of the litigation, Habblett has traveled to Austria nine or ten times); *id.* at 22 (testifying that he attended part of the Austrian criminal proceedings against some of the defendants); *id.* (stating that he reviewed the class action complaint and class certification motion prior to filing). Moreover, Habblett's recent communication with this Court demonstrates that he understands the class action mechanism and appreciates the responsibilities of a class representative. *See* 9/8/03 Letter to Rice from Habblett, attached to 9/11/03 Letter to the Court from Jay Rice ("9/11/03 Rice Ltr.") (listing necessary attributes of a class counsel and class representative). Nevertheless, the Court has doubts about Habblett's ability to adequately represent the interests of the putative class.

### c. Habblett's Unwillingness to Work with Others

Habblett has vehemently demanded that he be appointed the sole class representative, refusing to serve as co-class representative with any of the other American families. *See*

11. The cases cited by defendants are inapposite because they relate to Texas's survival statute rather than its wrongful death statute. *See*

10/01/03 Bishop Ltr. at 1 (citing two cases involving lawsuits brought to recover real and personal property belonging to an estate).

Habblett Ltr. at 2.[12] Habblett's unwillingness to share the responsibility with other members of the victim class and the tenacious and demanding tone of his letter suggest that he may be unable to work and communicate effectively with others.[13]

Given the complexity of this multi-district litigation against numerous foreign defendants, and the geographic diversity of the victims, the putative class members would be ill-served by a single class representative. Class certification is therefore conditioned upon Habblett's working with another named plaintiff as co-class representative and a committee of foreign class members.[14]

## 2. Adequacy of Class Counsel

Plaintiffs have adequate class counsel in the combination of the firms Kohn, Swift, & Graf ("Kohn Swift"); Nagel, Rice, & Mazie, LLP ("Nagel Rice"); and Speiser Krause. All three firms have significant experience with various types of class actions, including products liability actions. *See, e.g.,* "KS & G's Philosophy: What We Have Done," Ex. 3B to 8/1/03 Declaration of Hilary Cohen ("8/1/03 Cohen Dec.") (listing at least six products liability cases in which Kohn Swift has served as class counsel); Biography of Bruce Nagel, Ex. 4B to 8/1/03 Cohen Dec. (listing ten class actions in which Nagel Rice has or is currently serving as lead or co-lead counsel); "About Speiser Krause," *available at* http://www.speiserkrause.com/about/ ("Since its inception, our firm, both on its own and as lead counsel or co-counsel with other law firms, has successfully handled thousands of plaintiff cases arising from major disasters. We also pioneered group handling of mass disaster lawsuits in aviation, admiralty and oil rig disasters, hotel fires,

rail accidents and other catastrophic occurrences."). Throughout the pendency of this litigation, the attorneys from each of these firms have conducted themselves professionally, complied with all deadlines, and generally met the Court's expectations.

Contrary to defendants' contention, the Court does not find Fagan inadequate to serve as co-lead counsel with the aforementioned firms. In addition to having significant class action experience, *see* Curriculum Vitae of Edward D. Fagan, Ex. D to Pl. Mem., Fagan has been instrumental in keeping the non-American victim families and their counsel apprised of all issues and developments in the case. *See* Letters to the Court from Helmut and Eve Bieber, Anneliese Ferstl, Britta Lenglacher, and Martin & Renate Niederberger, non-American victim families ("Non–American Victim Ltrs."), Exs. 8–11 to Fagan Supp. Dec. ("Mr. Fagan works closely with our local Austrian lawyers. He discusses with, explains to and consults us about the strategies being undertaken with regard to the prosecution of the U.S. case … Mr. Fagan [has] informed us of all developments and decisions of the U.S. Court."); *see also* Letters to the Court from Dr. Jurgen Hinterwirth, Dr. Ulrich Schwab, Dr. Gerald Hass, Dr. Anton Frank, Mag. Ursula Schilchegger–Silber, Mag. Andreas Rabl, Mag. Gerhard Eigner, and Dr. Herwig Hasslacher, counsel for non-American victim families, Exs. 3–7 to Fagan Supp. Dec. (stating that Fagan frequently travels to Austria to meet with the victims, monitor the criminal investigation, and gather information for the case).

Fagan's commitment and dedication to his clients is quite impressive. *See* Non–American Victim Ltrs. ("From the very beginning, Mr. Fagan fought for our rights, for our dignity and to try to help us get information

---

12. Habblett also stated in his letter that he is unwilling to work with two of plaintiffs' counsel, *see* Habblett Ltr. at 1 (requesting that he not be appointed class representative if either Fagan or Kenneth Nolan of Speiser, Krause, Nolan & Granito ("Speiser Krause") are appointed class counsel), but has since informed the Court that he no longer objects "to the appointment of the Nolan firm as one of the class counsel, as long as that appointment would be in conjunction with [Rice's firm] and/or [] Swift's firm." 9/16/03 Letter to the Court from Rice.

13. Fagan contends that members of the victim class have expressed dissatisfaction with Habblett's level of communication and relationship with them. *See* 9/11/03 Letter to the Court from Fagan ("9/11/03 Fagan Ltr.") at 2.

14. Should Habblett continue to refuse to work with Goodridge, class certification will depend upon another American class member's (*i.e.,* Filkil, Baker, or Kern's) agreement to serve as co-class representative with Habblett and demonstrating that he or she is qualified.

so we could decide for ourselves what should be done with our ... claims."); 8/4/03 Declaration of Margarete Endl, translator for plaintiffs, Ex. 12 to Fagan Supp. Dec. ("[N]o lawyer has worked as much and as hard to fight for the rights and interests of Kaprun victim families, than Mr. Fagan."). Although there was a problem at one point with Fagan's responsiveness to the Court, *see* Transcript of 3/3/03 Conference at 2–3, Fagan has since adopted an effective means of communication with the Court, which allows him to be in constant contact while abroad.

Nevertheless, the Court cannot appoint Fagan as co-lead counsel because Swift and Nagel have refused to work with him. *See* 9/10/03 Letter to the Court from Swift. Fagan himself acknowledges that he cannot handle this case alone.[15] *See* 9/11/03 Fagan Ltr. at 2 ("While I could rearrange my entire practice to handle the Kaprun case with only one other firm, I do not believe that is in the best interests of the victim class."). Recognizing, however, that the non-American members of the putative class would be better served if Fagan continues to play a role in class-wide issues, certification is conditioned upon class counsel's agreement to work with Fagan as liaison counsel for the non-American class members.

### B. Rule 23(b)

Rule 23(b) provides that "an action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition" one of three alternative definitions of maintainability, (b)(1)-(3), is met. Plaintiffs argue that this action meets the definitions articulated in subsections (b)(2) and (b)(3). Plaintiffs are correct with respect to subsection 23(b)(3).

#### 1. 23(b)(3)

Rule 23(b)(3) requires "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action [be] superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3).

#### a. Predominance

"In order to meet the predominance requirement of Rule 23(b)(3), a plaintiff must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, ... predominate over those issues that are subject only to individualized proof." *Visa Check*, 280 F.3d at 136 (internal quotation marks and citation omitted). "Common issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damage issues." *Id.* at 139.

Plaintiffs have identified a myriad of issues of law and fact common to all members of the proposed class, including: whether any of the defendants negligently and defectively designed and constructed the tunnel, train, or products carried on the train; whether any of the defendants negligently failed to conduct safety inspections of the train; whether any of the defendants negligently operated the train; whether defendants had knowledge of the unsafe conditions of the train and tunnel prior to November 11, 2000; whether any of the defendants promoted the train as a safe means of transport to the ski areas; whether any of the defendants altered, concealed or destroyed evidence from the disaster. *See* Pl. Mem. at 5–6. All of these issues are subject to generalized proof. In fact, the only issue in the case that requires individualized determinations is the calculation of damages.[16] Because plaintiffs seek to certify the class with respect to liability only, there is no question that common issues predominate.

Defendants argue that plaintiffs' claims for deception and fraud, *see* Consolidated and Amended Complaint ("Am.Compl.") ¶¶ 367–

---

**15.** Speiser Krause "has no objections or concerns" about working with Fagan, but will not work with him alone. *See* 9/11/03 Fry Ltr. (stating that they are willing to serve as class counsel with a minimum of two of the existing firms).

**16.** The identification of the members of the class may also require some individualized determinations as to the rightful heirs to the decedents' estates, but those determinations can be made during the damages phase of the litigation. *See infra* Part III.B.1.b.ii.

72, and intentional infliction of emotional distress, *see id.* ¶¶ 378–80, "introduce into the case a host of individualized issues that would overwhelm any common issues." Def. Mem. at 27. I disagree. A fraud suit *may* be unsuitable for class treatment where there is "material variation in the representations made or the kinds of degrees of reliance by the persons to whom they were addressed." Fed.R.Civ.P. 23(b)(3) Advisory Committee Note to 1966 Amendments. There is, however, no variation here in the representations of safety nor in plaintiffs' reliance on such representations. Thus, class treatment on the fraud claim is appropriate. *See id.* (explaining that "a fraud perpetrated on numerous persons by the use of similar misrepresentations may be an appealing situation for a class action, and it may remain so despite the need, if liability is found, for separate determination of the damages suffered by individuals within the class").

The same reasoning applies to plaintiffs' claim for intentional infliction of emotional distress. Defendants' alleged conduct, giving rise to this claim, was the same with respect to all of the victims. Thus, any individualized determinations will relate to damages—not liability, making the claim appropriate for class treatment.

### b. Superiority

▮ The superiority question under Rule 23(b)(3) requires a court to consider whether a class action is superior to other available methods of adjudication. Class actions are the superior method for resolving controversies when the main objects of Rule 23 are served; namely, the efficient resolution of the claims or liabilities of many individuals in a single action. *See Califano v. Yamasaki,* 442 U.S. 682, 701, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979). The Court should consider, among other things, the interests of individual class members in controlling their own litigation, the extent of other litigation arising from the same accident, the desirability of concentrating the litigation in the forum, and the potential management difficulties. *See* Fed.R.Civ.P. 23(b)(3).

### i. Interests of Individual Class Members

Traditionally, courts have been reluctant to apply the class action device to mass accident litigation. *See Manual for Complex Litigation,* § 33.24, at 298 (2d. ed.1985). The comment to Rule 23(b)(3) explicitly cautions against the use of the class action device in mass tort cases. *See* Fed.R.Civ.P. 23(b)(3) Advisory Committee Note to 1996 Amendments ("A 'mass accident' resulting in injuries to numerous persons is ordinarily not appropriate for a class action because of the likelihood that significant questions, not only of damages but of liability and defenses to liability, would be present, affecting the individuals in different ways."). The Second Circuit has explained its "skepticism over the usefulness of class actions in so-called mass tort cases" as resulting, in part, from the likelihood that plaintiffs in mass tort cases do not share common interests because of differences in the strength of their claims:

> If plaintiffs with strong claims remain members of the class, they may see their claims diluted because a settlement attractive to the defendants will in all likelihood occur ... If the strong plaintiffs opt out, however, the efficiencies of a class action may be negative. The class would then consist largely of plaintiffs with weak cases, many or most of which should never have been brought. The defendants would be unlikely to settle with the class ... and [b]oth the class action and the strong cases would then have to be tried.

*In re "Agent Orange" Prod. Liab. Litig.,* 818 F.2d 145, 166 (2d Cir.1987); *see also* 7B Charles A. Wright, Arthur R. Miller, & Mary K. Kane, *Federal Practice and Procedure,* § 1783, at 115 (1972) ("Fed.Prac. § 1783") ("When personal injury and death claims are involved, a strong feeling prevails that everyone enmeshed in the dispute should have his own day in court and be represented by a lawyer of his choice."). It is not surprising, therefore, that a large number of courts have refused to certify a class in mass tort situations. *See, e.g., In re Northern Dist. of Cal. Dalkon Shield IUD Prods. Liab. Litig.,* 693 F.2d 847 (9th Cir.1982); *Marchesi v. Eastern Airlines,* 68 F.R.D. 500 (E.D.N.Y.1975);

*Hobbs v. Northeast Airlines, Inc.*, 50 F.R.D. 76 (E.D.Pa.1970).

█ Two of the leading authorities in the field of federal practice have suggested, however, that class action treatment is beneficial for determining liability in some cases arising out of mass disasters—*e.g.*, those in which there is little chance that defendants will assert unique defenses directed to some plaintiffs but not others. *See* Fed. Prac. § 1783, at 117; 3B J. Moore, *Federal Practice*, ¶ 23.45(3), at 23–811 n. 35 (2d ed.1974). More recently, there has been a growing recognition among courts that, under some circumstances, mass accident litigation may and probably ought to be maintained as a class action. *See, e.g., In re "Agent Orange"*, 818 F.2d at 166–67 (finding certification justified in order to prevent the relitigation of critical common defenses applicable to the entire plaintiff class); *Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468 (5th Cir.1986) (finding class certification in mass-tort case "superior to the alternative of repeating, hundreds of times over, the litigation" of defendants' defense); *Petition of Gabel*, 350 F.Supp. 624, 627 (C.D.Cal.1972) (holding in a multi-district airplane accident case that the issue of liability could be addressed in a class action, with damages trials to be returned to the transferor courts). Class action treatment is appropriate in situations where: (1) the class action is limited to the issue of liability; (2) the class members support the action; and (3) the choice of law problems are minimized. *See Causey v. Pan Am. World Airways, Inc.*, 66 F.R.D. 392, 397 (E.D.Va.1975).

This is a case in which class treatment would not only be appropriate, but also beneficial. *First*, the class action is limited to liability. *Second*, all putative class members stand in the same position vis-a-vis defendants with respect to liability, making it unlikely that defendants will assert any individual defenses. *Third*, because there is no disparity in the strength of plaintiffs' liability claims, there is little risk that they will want to pursue their own claims.[17] On the contrary, class members have a strong interest in not pursuing their own claims because few can afford to bring such a complex suit against foreign defendants on their own.[18] *See Kaprun Siemens AG*, 230 F.Supp.2d at 389 (recognizing that the "named plaintiffs have only modest means and would suffer hardship if forced to litigate in Austria"). In fact, the cost savings to plaintiffs are so great that the non-American plaintiffs are willing to take the risk that, when they litigate damages in their own countries [19] (presuming they win on liability in the United States), the American judgment of liability may not be recognized, thereby requiring them to relitigate liability.[20] *See* 10/07/03 Tr. (stating that the non-American plaintiffs are confident that the admission of a finding of liability from this Court will be persuasive evidence of liability in a foreign court, making it easier for them to litigate liability on their

---

17. To date, the Court has not been made aware of any other litigation arising from the Kaprun ski train fire.

18. Almost two-thirds of the victim families have expressed interest in participating in the class action. *See* 12/10/02 Declaration of Edward Fagan in Support of Plaintiffs' Motion for Class Certification, Ex. 11 to Pl. Reply Mem., ¶ 7 (stating that twenty-one to twenty-four victim families have agreed to participate through German counsel, fifty-six through Austrian counsel, and six through American counsel); 9/18/03 Letter to Dr. Ivo Greiter, local Austrian counsel, from Professor Dr. Toichiro Kigawa, counsel for Japanese victim families (stating that all ten Japanese families wish to join the class action).

19. The non-American plaintiffs will be unable to bring their damages actions against the foreign defendants in the United States because there is no diversity jurisdiction over a foreign plaintiff suing a foreign defendant in the United States. To the extent that any of the defendants are United States citizens, the non-American plaintiffs will be able to bring their damages actions against them in the United States on diversity grounds.

20. The risk is one-sided. Although plaintiffs have agreed to waive their right to re-litigate liability in the event of an adverse judgment, *see infra* Part III.B.I.b.iv., defendants have not agreed to do so and will likely seek to re-litigate liability in any damages actions brought in foreign jurisdictions. *See* Transcript of 10/07/03 Conference Call ("10/07/03 Tr."). Thus, if plaintiffs lose on the issue of liability, they will not have a second bite at the apple, whereas if defendants lose, they will have an opportunity to litigate liability in each of the foreign jurisdictions in which damages actions are brought.

own). Because the putative class members do not have the wherewithal to individually litigate defendants' liability, *see Kaprun Siemens AG,* 230 F.Supp.2d at 389, the class action mechanism is the superior method for adjudicating defendants' liability. *See Amchem Prods.,* 521 U.S. at 617, 117 S.Ct. 2231 (acknowledging that Rule 23(b)(3) is designed to vindicate "the rights of groups of people who individually would be without effective strength to bring their opponents into court at all") (internal quotation marks and citation omitted).[21]

### ii. Potential Management Difficulties

Defendants contend that plaintiffs' class definition is fraught with management difficulties, making class treatment an inferior method for adjudicating plaintiffs' claims of liability. *See* Def. Mem. at 15–20. In particular, defendants argue that in order to determine class membership, the Court must engage in numerous individualized determinations to ascertain whether each prospective member is the legal "heir, beneficiar[y][or] personal representative" of the estate of someone who perished in the fire, thereby requiring the Court "to sit as a probate court as to each decedent." Def. Mem. at 16.

Although class certification requires that it be "administratively feasible for the court to determine whether a particular individual" is a class member, *Rios v. Marshall,* 100 F.R.D. 395, 403 (S.D.N.Y.1983) (internal quotation marks and citation omitted), there is no need for the Court to reach this issue now. The determination of which heir (or heirs) of the decedents is entitled to a judg-

ment can be decided during the damages phase of the trial.[22] At this juncture, it is only necessary that the potential class representatives demonstrate that they are heirs, beneficiaries, or personal representatives of a decedent's estate and have standing to bring a wrongful death action, which they have done. *See* 9/30/03 Tr. (stating that Habblett is a beneficiary of Jennifer Habblett Goodridge's estate, as well as his grandchildren's estates); Letters of Administration, Circuit Court of Pinellas County, Florida, attached to 9/11/03 Rice Ltr. (appointing Harold Richard Baker as the personal representative of the state of Carrie Lynn Baker); Letters Testamentary, Probate Court of Madison, Alabama, attached to 9/11/03 Fry Letter (appointing Clair Goodridge as the personal representative of Michael C. Goodridge's estate); Letters of Administration, Probate Court of Madison, Alabama, attached to 9/11/03 Fry Ltr. (appointing Goodridge as the personal representative of Michael J. and Kyle Goodridge's estates).[23]

### iii. Superiority of Forum

Both the MDL Panel and this Court have previously ruled that the Southern District of New York ("SDNY") is the preferable forum in which to consolidate plaintiffs' claims for pre-trial purposes. *See* MDL Order (observing that the SDNY is the forum of choice of all plaintiffs and "provides a convenient forum for a litigation involving an incident overseas and numerous foreign defendants"); *Kaprun Siemens AG,* 230 F.Supp.2d at 391 (rejecting defendants' motion to dismiss on the grounds of forum non conveniens). The determination of the appropriateness of a

---

**21.** I recognize that class certification will allow many non-Americans to take advantage of this country's legal system and its class action device, which is unavailable in many foreign jurisdictions. However, because I have found that: this Court has jurisdiction over defendants; this forum is appropriate; and class certification is the superior method for adjudicating defendants' liability; this result is a necessary consequence of the application of American procedural and class action rules.

**22.** The Court recognizes that, where there are disputes as to who is the proper beneficiary of a decedent's estate, the matter may have to be referred to the appropriate probate court. *See*

*Dulce v. Dulce,* 233 F.3d 143, 145 (2d Cir.2000) ("[A] federal court has no jurisdiction to probate a will or administer an estate.") (citing *Markham v. Allen,* 326 U.S. 490, 494, 66 S.Ct. 296, 90 L.Ed. 256 (1946)).

**23.** Plaintiffs have not yet submitted proof with respect to the Kerns or Filkils. Although Rudolph Kern is named in Erich Kern's will as the executor of his son's estate, *see* Last Will and Testament of Erich Eudolph Kern, attached to 9/11/03 Rice Ltr., Mr. Kern has not yet applied for or been granted Letters of Administration. The Filkils have only recently joined the case.

particular forum for the maintenance of a class action is based on similar considerations. *See Hobbs,* 50 F.R.D. at 80 n. 6 ("In determining the appropriateness of a particular forum [pursuant to Rule 23(b)(3)], it would seem proper to utilize considerations similar to those of the federal transfer statute, 28 U.S.C. § 1404(a), and the Multidistrict Litigation Statute, 28 U.S.C. § 1407.").[24] Thus, the SDNY is the desirable forum in which to litigate this class action.

### iv. Preclusive Effect of Judgment

Although the factors set forth in Rule 23(b)(3) clearly militate in favor of resolving plaintiffs' liability claims in a single action, defendants argue that a class action proceeding would not be superior because an adverse judgment would not bind class members. *See* Def. Mem. at 13–14. Defendants contend, in particular, that because the Austrian courts will not recognize—let alone accord preclusive effect to—a judgment of this Court, class members will be free to pursue their claims anew in Austria. *See id.* at 14 (citing 6/26/03 Supplemental Declaration of Dr. Georg Kodek, appointed to Vienna Court of Appeals, Ex. 6 to Def. Mem., ¶¶ 12–15).

 It is axiomatic that the purpose of a class action is to resolve finally the claims of all members of a class so that future litigation need not occur. *See, e.g., Donovan v. University of Texas at El Paso,* 643 F.2d 1201, 1206–07 (5th Cir.1981). ("It is undisputed that the purpose of Rule 23 is to prevent piecemeal litigation to avoid: (i) a multiplicity of suits on common claims resulting in inconsistent adjudications; and (ii) the difficulties in determining *res judicata* effects of a judgment."). Thus, as defendants argue, it would be an inefficient use of judicial resources to certify a class in an action

that is guaranteed to have no preclusive effect. This is not such an action.

While Austrian courts are not bound by judgments of American courts, there is nothing that prohibits them from recognizing such proceedings. In any event, plaintiffs have ameliorated the potential preclusion problems by conditioning participation in this class action on each class member's agreement to be bound by a final determination on the merits as to liability. Therefore, even if plaintiffs ultimately are disappointed with the result of the United States litigation, they will be precluded from re-litigating their claims against these defendants in Austria or any other jurisdiction. Thus, a verdict of no liability from a United States court will give defendants complete finality.

Although a verdict finding defendants liable will not result in finality (because the foreign defendants may be able to re-litigate this issue in foreign jurisdictions),[25] defendants will be no worse off for having litigated liability in the United States. In the absence of class certification, defendants would still face suit in the United States on the eight Americans' claims, *as well as* in at least three foreign countries. If defendants are found liable in a United States class action, the foreign defendants may still be able to defend themselves in those countries. But, if defendants prevail on liability, they will have achieved finality by defending in *only* one action. Thus, it is as likely as not that this case *will* fully resolve plaintiffs' claims.

### v. "Opt–In" Class

 Because participation in the class requires prospective members to take affirmative action—namely, to consent to be bound by the judgment—plaintiffs seek to certify an "opt-in" class, as opposed to the traditional Rule 23(b)(3) "opt-out" class.[26] An "opt-in"

---

24. There is, however, a difference in which party carries the burden of proof; defendants have the burden of proof in the forum non conveniens context whereas plaintiffs bear the burden in establishing the elements of Rule 23. But the distinction is minimal here because defendants' burden in the forum non conveniens context was reduced. *See Kaprun Siemens AG,* 230 F.Supp.2d at 388 (stating that plaintiffs' choice of forum is entitled to less deference because they have sued in a representative capacity).

25. A liability verdict against the American defendants will have preclusive effects, presuming plaintiffs bring their damages actions against those defendants in the United States.

26. Plaintiffs have not actually articulated why they propose an opt-in class. But this is the only rational explanation.

class is necessary here because it would be unfair to presumptively include members in a class for which membership depends upon the waiver of a right. Indeed, the requirement that class members consent to be bound by the judgment is analogous to a Fair Labor Standards Act ("FLSA") action, which binds only those who affirmatively desire to be class members.[27] Thus, the FLSA requirement that *all* class members "opt-in" is warranted here.[28]

Defendants oppose the creation of an "opt-in" class, arguing that there is no precedent in Rule 23 jurisprudence for such an "unusual" class definition. Def. Mem. at 22. While it is true that this Court has been unable to find a case in which an "opt-in" class was certified under Rule 23, there is nothing in the rule or case law that precludes such certification.[29] On the contrary, a few courts have acknowledged that "opt-in" classes may be necessary in certain circumstances. *See, e.g., Robinson v. Union Carbide Corp.*, 544 F.2d 1258, 1260–61 (5th Cir.1977) (recogniz-

ing that there are some class actions where it may be necessary for class members to opt in); *In re Crazy Eddie Sec. Litig.*, 135 F.R.D. 39, 42 (E.D.N.Y.1991) ("Circumstances may require a court to depart from the spirit of the Federal Rules and impose what amounts to an opt-in requirement.").[30]

■ The fact that Rule 23 does not explicitly authorize courts to certify "opt-in" classes under Rule 23(b)(3) is immaterial. This Court's authority to certify an opt-in class, where necessary, derives from its equitable powers. After all, the "class suit was an invention of equity." *Hansberry v. Lee*, 311 U.S. 32, 41, 61 S.Ct. 115, 85 L.Ed. 22 (1940); *see also Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 832, 119 S.Ct. 2295, 144 L.Ed.2d 715 (1999) (acknowledging that the modern class action device developed as an exception to the rigidity of the necessary parties rule in equity, as well as from the bill of peace, an equitable device for combining multiple suits) (citations omitted).[31]

---

**27.** Under section 216(b) of FLSA, a member of the class who is not named in the complaint is not a party unless she affirmatively "opts-in" by filing a written consent-to-join with the court. *See* 29 U.S.C. §§ 216(b), 256.

**28.** The opt-in requirement pertains to the American plaintiffs, as well as the foreign plaintiffs, because they too must waive their rights to sue these defendants in any foreign jurisdictions.

**29.** The Supreme Court has decided only that the Due Process Clause of the Fifth Amendment does not require plaintiffs to affirmatively "opt-in" to a class, rather than be deemed members of the class if they do not "opt-out". *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985) (finding that the procedure of sending each class member a descriptive notice with an explanation of the right to "opt-out" satisfies due process). The Court has not addressed whether "opt-in" classes may be beneficial in certain circumstances.

**30.** Defendants cite a number of cases in which they contend "courts have consistently rejected the notion that Rule 23 permits plaintiffs to create 'opt-in' classes." Def. Mem. at 22. In none of those cases, however, was the issue of the court's authority to certify an "opt-in" class under Rule 23 placed squarely before the court. *See, e.g., H.W. Urban GmbH, D & H v. Republic of Argentina*, No. 02 Civ. 5699, 2003 WL 21058254, at *2 (S.D.N.Y. May 12, 2003) (stating, in dicta: "The court has suggested in the hearings thus far held that it might be desirable to have the class consist of persons who 'opt in,' if class action

treatment is permitted. The plaintiffs ... oppose this, as contrary to Rule 23, and they are *probably* correct.") (emphasis added). Some courts have merely stated, in passing, that an "opt-in" class is contrary to the purpose of Rule 23(b)(3), without considering whether there could ever be a need for such a class. *See, e.g., Kohne v. IMCO Container Co.*, 480 F.Supp. 1015, 1018 (W.D.Va. 1979).

**31.** The necessary parties rule mandated that "all persons materially interested, either as plaintiffs or defendants in the subject matter of the bill ought to be made parties to the suit, however numerous they may be." *West v. Randall*, 29 F. Cas. 718, 721 (No. 17,424) (C.C.D.R.I. 1820). But because the rule sometimes led to an unfair denial of recovery to the party before the court, equity developed exceptions, among them one to cover situations "where the parties are very numerous, and the court perceives, that it will be almost impossible to bring them all before the court; or where the question is of general interest, and a few may sue for the benefit of the whole; or where the parties form a part of a voluntary association for public or private purposes, and may be fairly supposed to represent the rights and interests of the whole ...." *Id.* at 722. From these roots, modern class action practice emerged in the 1966 revision of Rule 23. In drafting Rule 23(b), the Advisory Committee "sought to catalogue in 'functional' terms 'those recurrent life patterns which call for mass litigation through representative parties.'" *Ortiz*, 527 U.S. at 832, 119 S.Ct. 2295 (quoting Kaplan, A

Because I find that a class action is the superior method of adjudicating plaintiffs' liability claims, and class membership requires consent to be bound by the judgment, this action should proceed as an "opt-in" class action. Notice should be given to all potential class members of their right to "opt-in." *Cf. Braunstein v. Eastern Photographic Labs., Inc.,* 600 F.2d 335, 336 (2d Cir.1979) (holding that a district court has the power to order that notice be given to potential members of plaintiff class under opt-in provisions of FLSA).

**2. 23(b)(2)**

 Plaintiffs additionally move for certification under Rule 23(b)(2), which authorizes certification when "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R.Civ.P. 23(b)(2). Rule 23(b)(2) certification is improper "in cases in which the appropriate final relief relates exclusively or predominantly to money damages." *Visa Check,* 280 F.3d at 146 (citing Fed.R.Civ.P. 23(b)(2) Advisory Committee Note); *see also Eisen v. Carlisle & Jacquelin,* 391 F.2d 555, 564 (2d Cir.1968) ("Subsection (b)(2) was never intended to cover cases ... where the primary claim is for damages, but is only applicable where the relief sought is exclusively or predominantly injunctive or declaratory."), *vacated on other grounds,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). "However, if money damages are merely incidental to plaintiffs' request for injunctive or declaratory relief, class actions may be certified under Rule 23(b)(2)." *Bolanos v. Norwegian Cruise Lines Ltd.,* 212 F.R.D. 144, 156–57 (S.D.N.Y.2002) (internal quotation marks and citations omitted).

 When presented with a motion for class certification of a claim seeking both injunctive and non-incidental monetary relief,

a district court must "assess whether [Rule 23](b)(2) certification is appropriate in light of the relative importance of the remedies sought, given all of the facts and circumstances of the case." *Robinson v. Metro–North Commuter R.R. Co.,* 267 F.3d 147, 164 (2d Cir.2001) (internal quotation marks and citations omitted). A court may allow certification under Rule 23(b)(2) if it finds that "(1) the positive weight or value [to the plaintiffs] of the injunctive or declaratory relief sought is predominant even though compensatory or punitive damages are also claimed, and (2) class treatment would be efficient and manageable, thereby achieving an appreciable measure of judicial economy." *Id.* (internal quotations marks and citations omitted). "Insignificant or sham requests for injunctive relief should not provide cover for (b)(2) certification of claims that are brought essentially for monetary recovery." *Id.* (citation omitted).

Here, plaintiffs seek punitive and compensatory damages for wrongful death, pain and suffering, and economic losses, *see* Am. Compl., Prayer for Relief ¶ c, as well as declaratory and injunctive relief to "prevent the immediate and future commercial use" and "advertisement of the train and tunnel, as well as other similar trains and tunnels owned and/or operated by defendants," *id.* ¶¶ a, b. It is clear from the Complaint, however, that this case is primarily about compensating plaintiffs for the tragic loss of their loved ones. Although plaintiffs have not yet provided an estimate of the damages they seek, it can be assumed that the amount is not insignificant. The "non-incidental nature" of the damages sought by plaintiffs demonstrates that their damages claims predominate over their claims for declaratory and injunctive relief.[32] *Augustin v. Jablonsky,* No. 99 Civ. 3126, 2001 WL 770839, at *9 (E.D.N.Y. Mar.8, 2001). Moreover, the injunctive relief that plaintiffs seek—to prevent the operation and advertising of the train and other trains operated by defendants—relates only to a small number of defendants.[33] *See Abramovitz v. Ahern,* 96

Prefatory Note, 10 B.C. Ind. & Com. L.Rev. 497 (1969)).

**32.** The fact that plaintiffs never sought preliminary injunctive relief is further evidence that injunctive relief is not a priority.

**33.** For example, defendants who manufactured a

F.R.D. 208, 216 (D.Conn.1982) (denying class certification under Rule 23(b)(2) based in part on the fact that such relief "is directed primarily against the [defendant] custodians of certain records, and as such it does not apply to all of the defendants.").

Lastly, because I have found that certification is appropriate under Rule 23(b)(3), there is no benefit to additionally certifying the class under (b)(2). *See Chateau De Ville Prods., Inc. v. Tams–Witmark Music Library, Inc.,* 586 F.2d 962, 966 n. 14 (2d Cir.1978) (noting that when a district court certifies a class under both Rule 23(b)(2) and (b)(3), "major problems can arise ... where different procedural consequences attach depending upon the subsection used"); *see also Bolanos,* 212 F.R.D. at 157 n. 11 ("If, as recommended, a Rule 23(b)(3) class is certified here, ..., it would not be error to certify the class under Rule 23(b)(2) also, but it would add nothing to do so and in fact would complicate matters.") (internal citation omitted). Thus, class certification under 23(b)(2) is denied.

## IV. CONCLUSION

For the foregoing reasons, plaintiffs' motion for class certification is conditionally granted if, within thirty days of this Order: (1) there are at least two plaintiffs who are willing and qualified to serve as a co-class representatives; (2) the class representatives agree to work with a committee of non-American class members; and (3) class counsel agree to work with Fagan as liaison counsel to the non-American class members.

SO ORDERED.

part of the Kaprun train have no role in deciding whether the train will continue to operate or advertise.